J-S49001-14

2014 PA Super 253

COMMONWEALTH OF PENNSYLVANIA,     IN THE SUPERIOR COURT OF
PENNSYLVANIA

            Appellee

            v.

BRAHEIM PARKER,

            Appellant          No. 918 EDA 2011

Appeal from the Judgment of Sentence of March 4, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008056-2009

BEFORE:  OLSON, OTT and STABILE, JJ.

OPINION BY OLSON, J.:            **FILED NOVEMBER 06, 2014**

Appellant, Braheim Parker, appeals from the judgment of sentence entered on March 4, 2011.  In this appeal, we consider whether an out-of-court question can be hearsay.  We hold that an out-of-court question can be hearsay if it includes an assertion.  We conclude, however, that the hearsay statement in this case was properly admitted into evidence.  As we also conclude that Appellant is not entitled to relief with respect to his remaining claims of error, we affirm.

The trial court[1] accurately set forth the factual background of this case as follows:

---

[1] We are grateful to the Honorable Linda A. Carpenter for her thorough opinion in this case.  The original trial judge resigned three months after the judgment of sentence was entered and Judge Carpenter was later assigned to this case for the purposes of issuing a Rule 1925(a) opinion.

On August 5, 2008, shortly after midnight, Dorothy Miller [("Grandmother")] observed her grandson, Chauncy Miller [("Victim")], go out onto the porch of her house, located on 29th Street between Jefferson Street and Master Street in the City of Philadelphia. Approximately one hour later, [Victim] called [G]randmother and, with a frustrated voice, asked her to "tell Bey that he had been in the house all day" and to tell Bey that "he didn't take anything from anybody and doesn't have anything." [Grandmother] instructed [Victim] to put Bey on the phone, but moments later the phone went dead. Approximately[] ten minutes later, [G]randmother received another call in which the caller said "Grandmom, Chauncy just been shot on 28th Street outside right where the church is." [Grandmother] immediately went to the location on 28th Street, but could not see [Victim] because the police had already placed a sheet over his body and were securing the crime scene.

Anthony Hyman [("Hyman")] had been sitting out on the porch of a friend's house located near 1400 North 28th Street when he heard a gunshot. He looked toward Jefferson Street and observed a male weaving in and out of parked cars being chased by another male who continued shooting at him. Hyman ran into the lot on the corner and laid in the grass. He heard another shot and then saw the male being shot at run past the lot. After the gunshots had stopped, Hyman exited the lot and saw a male named Dante Jones [("Jones")] and a female walking from Master Street onto 28th Street. Hyman then saw the body of the man who was shot lying in the street. Hyman told Jones that he had not seen the shooter, even though he had, because he did not want his knowledge of the shooting being spread to the [community]. Jones told Hyman that the male who had been shot was named Chauncy.

Officer [Lynda] Smith was the first officer to respond to the radio call for a shooting in the vicinity of 28th Street and Master Street and, upon arrival, observed [Victim] lying on the ground with Hyman and Jones standing next to him. [Victim] was not conscious, was bleeding from the head, and was pronounced dead at 1:40 a.m. by [a paramedic].

Trial Court Opinion, 2/24/14, at 4-5 (internal alterations, footnotes, and honorifics omitted).

The procedural history of this case is as follows. On September 23, 2008, a criminal complaint was filed charging Appellant with first-degree murder,[2] possession of a firearm by a prohibited person,[3] carrying a firearm without a license,[4] carrying a firearm on the streets of Philadelphia,[5] and possession of an instrument of crime.[6] On June 19, 2009, a criminal information was filed charging those same offenses.[7] On February 28, 2011, a jury was seated and trial began on March 1, 2011. On March 4, 2011, Appellant was found guilty of all charges and was immediately sentenced to an aggregate term of life imprisonment without the possibility of parole.

Appellant filed a timely notice of appeal. On April 6, 2011, the trial court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925 requiring Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). Appellant failed to timely comply with that order. On November 6, 2013, Appellant filed an application with this Court requesting that the case be remanded for the

_____

[2] 18 Pa.C.S.A. § 2502(a).

[3] 18 Pa.C.S.A. § 6105(a)(2)(i).

[4] 18 Pa.C.S.A. § 6106(a)(1).

[5] 18 Pa.C.S.A. § 6108.

[6] 18 Pa.C.S.A. § 907(a).

[7] However, the possession of a firearm by a prohibited person charge was changed from a violation of section 6105(a)(2)(i) to a violation of section 6105(a.1)(1).

filing of a concise statement and the issuance of a Rule 1925(a) opinion. On

November 26, 2013, this Court granted Appellant's request and remanded

this matter to the trial court. On December 16, 2013, Appellant filed his

concise statement, which included all issues raised on appeal. On February

24, 2014, the trial court issued its Rule 1925(a) opinion.

Appellant presents five issues for our review:

1. Did the trial court err when it denied [the] defense motion *in limine* to not allow hearsay testimony of a conversation between [Victim] and [G]randmother?

2. Did the trial court err when it permitted the jury to be provided the statement and photo array [presented to the] main Commonwealth witness?

3. Did the trial court err when it denied [the] defense motion for [a] mistrial when a police detective testified a photo array was generated from a police [database]?

4. Did the trial court err when it denied [the] defense motion to prevent [a] detective from testifying about double hearsay concerning [the C]ommonwealth witness' motivation to testify less than truthfully?

5. Did the trial court err in charging the jury on flight when the record failed to establish evidence of flight?

Appellant's Brief at 1.[8]

Appellant first challenges the trial court's denial of his motion *in limine*

to prohibit introduction of the utterances by Victim to Grandmother.

Appellant contends that such utterances were inadmissible hearsay. "When

reviewing a ruling on a motion *in limine*, we apply an evidentiary abuse of

---

[8] We have re-numbered the issues for ease of disposition.

- 4 -

discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion." ***Commonwealth v. Orie***, 88 A.3d 983, 1022 (Pa. Super. 2014), *appeal denied*, 172 WAL 2014 (Pa. Sept. 17, 2014) (internal alteration and citation omitted).

Appellant objects to the following questioning of Grandmother by the Commonwealth:

> Q. Can you describe for the members of the jury what he said, what [Victim] said?
>
> A. He said, **Grandmom, he said, Can you tell Bey I didn't take anything from anybody and I don't have anything? He said, But can you tell him I didn't take anything from him or the house.** And I said, Put Bey on the phone and I will tell him you been in the house all day and you just went out on the porch. And he said – I said, Where's Bey? I said put Bey on the phone.
>
> He kept talking to someone in the background; I could hear that. And then somebody was saying no, no, uh-uh, and I said, Well Chauncy, is he going to get on the phone? And the phone went dead.
>
> Q. When he said those things to you, can you describe his demeanor for the jury when he was speaking to you?
>
> A. It was like he, you know, like he -- I don't know how to put it. You know not his regular voice. It was like he was, you know, like sort of like frustrated or something.
>
> Q. Did the name Bey mean anything to you?
>
> A. No

N.T., 3/1/11, at 65-66 (emphasis supplied).

- 5 -

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.Evid. 801(c).[9] Statement is defined, in relevant part, as "an oral or written assertion[.]" Pa.R.Evid. 801(a). "Communications that are not assertions are not hearsay. These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc." Pa.R.Evid. 801 cmt.

The trial court found that the utterances by Victim to Grandmother were not hearsay because they were questions and were not assertions offered for the truth of the matter asserted. N.T., 3/1/11, at 12. We disagree.

Although the issue raised by Appellant has been addressed by a multitude of courts throughout the country, neither this Court nor our Supreme Court has confronted the issue. As the Supreme Court of Kentucky has explained:

> Whether a question can be an assertion and, thereby, hearsay has been extensively discussed by numerous courts and commentators, though no consensus has been reached. The courts that have considered the issue have reached one of three conclusions: (1) a question can be hearsay if it contains an assertion; (2) a question can be hearsay if the declarant

---

[9] Unless otherwise noted, all references to the Pennsylvania Rules of Evidence in this opinion are to the rules in place at the time of Appellant's trial. Effective March 18, 2013, the former rules of evidence were rescinded and replaced with the current rules of evidence. *See* 43 Pa.B. 620 (Feb. 2, 2013). There are no substantive differences between the former rules discussed in this opinion and the current rules.

intended to make an assertion; or (3) questions can never be hearsay because they are inherently non-assertive.

***Harris v. Kentucky***, 384 S.W.3d 117, 126 (Ky. 2012).

The Kentucky Supreme Court adopted the first approach in ***Harris***. It reasoned that there is "no logical reason why the grammatical form of an utterance—whether a declarative sentence, a command[,] or a question—should conclusively determine whether the utterance is an assertion." ***Id.*** at 127. Other courts have reached similar conclusions. ***See, e.g. Ex parte Hunt***, 744 So.2d 851, 857 (Ala. 1999); ***Powell v. Indiana***, 714 N.E.2d 624, 627-628 (Ind. 1999) ("[V]erbal conduct intended to assert a fact but phrased as a question is equally capable of being a 'statement.'"); ***Brown v. Virginia***, 487 S.E.2d 248, 251 (Va. App. 1997) (*en banc*); ***Kolb v. Wyoming***, 930 P.2d 1238, 1246 (Wyo. 1996); ***Alaska v. McDonald***, 872 P.2d 627, 645 (Alaska App. 1994); ***Iowa v. Rawlings***, 402 N.W.2d 406, 409 (Iowa 1987) ("In the present case, the utterance . . . was couched as a question but it was phrased in such a manner as to make it an implicit assertion of the fact."); ***Carlton v. Maryland***, 681 A.2d 1181 (Md. Ct. Spec. App. 1996).

The District of Columbia Court of Appeals and several United States Courts of Appeals have adopted the second approach. ***See Harrison v. United States***, 76 A.3d 826, 835 n.7 (D.C. 2013); ***United States v. Flores***, 286 F. App'x 206, 213 (5th Cir. 2008) (*per curiam*); ***United States v. Summers***, 414 F.3d 1287, 1300 (10th Cir. 2005) ("focus [of] the inquiry

[is] on the declarant's intent"); ***United States v. Long***, 905 F.2d 1572, 1579 (D.C. Cir. 1990) ("The caller's words, thus, cannot be characterized as an 'assertion,' even an implied one, unless the caller intended to make such an assertion."). These courts have adopted the second approach because of the note to Federal Rule of Evidence 801(a). That note provides that, "When evidence of conduct is offered on the theory that it is not a statement, and hence not hearsay, a preliminary determination will be required to determine whether an assertion is intended." Fed.R.Evid. 801(a) note.

Finally, some state and federal courts have adopted the third approach. ***See United States v. Coplan***, 703 F.3d 46, 84 (2d Cir. 2012); ***Ohio v. Carter***, 651 N.E.2d 965, 971 (Ohio 1995) ("[B]ecause a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered 'to prove the truth of the matter asserted,' it does not constitute hearsay[.]").

We reject the third approach. As the United States District Court for the Eastern District of Kentucky has stated:

> [W]hether or not the testimony constitutes hearsay is not determined solely on the grammatical form it takes. Although it is true that questions generally are not hearsay, this is true because a question merely seeks answers and usually has no factual content. But a question[] might contain an assertion within it, and when it does, it is properly excluded as hearsay.

***Martin v. Patterson***, 2014 WL 769173, *8 (E.D. Ky. Feb. 25, 2014) (internal quotation marks and citation omitted).

There are clearly situations in which an utterance, although grammatically formulated as a question, makes an implied assertion. For example, "Can you give me that pocket watch sitting on your desk?," asserts that a pocket watch is sitting on your desk. Similarly, "Is Mr. Smith, the newest teacher at the school, your neighbor?," asserts that Mr. Smith is the newest teacher at the school. To hold that such utterances can never be considered hearsay would permit the admission of any out-of-court declaration as long as it was phrased as a question, instead of a direct assertion. Under such an approach, the focus of a hearsay objection would be on **how** a declarant made an utterance instead of the **content** of the utterance. Although such a bright-line approach may be appealing for its simplicity, it would permit out-of-court utterances that the general rule against hearsay is meant to preclude.

The Commonwealth cites to **Giant Eagle v. Unemployment Comp. Bd. of Review**, 659 A.2d 60 (Pa. Cmwlth. 1995), in support of its argument that we should adopt the bright-line third approach. In that case, the Commonwealth Court stated that, "Clearly, when we speak of proving the truth of the matter asserted we can only be speaking of a factual assertion, not an order or a command, not a question or a request." **Id.** at 62 (Della Porta, S.J. opinion announcing the judgment of the court).

Like decisions of federal courts and our sister states, the Commonwealth Court's decisions provide only persuasive authority. **See**

***Graver v. Foster Wheeler Corp.***, 96 A.3d 383, 387 n.6 (Pa. Super. 2014).

In this case, however, we are not persuaded that ***Giant Eagle*** supplies the

proper rule of decision for two reasons. First, the decision is not binding on

the Commonwealth Court since the two other judges who comprised the

panel merely concurred in the result. No subsequent panel of the

Commonwealth Court has cited to ***Giant Eagle*** for the proposition that

questions can never be assertions. Second, Senior Judge Della Porta did not

discuss the substantial case law from other jurisdictions on the matter or

provide any meaningful analysis. Instead, he made a conclusory statement.

Therefore, we decline to follow Senior Judge Della Porta's pronouncement in

***Giant Eagle***.[10]

We likewise reject the second approach, which holds that the

classification of a question as an assertion depends upon the subjective

intent of the declarant. Under this approach, there would be a mini-trial to

determine the subjective intent of the declarant. While it is difficult to

---

[10] Justice Saylor's concurring opinion in ***Commonwealth v. Lopez***, 739 A.2d 485 (Pa. 1999), could be interpreted as expressing his opinion that implied assertions are not hearsay. However, close examination of Justice Saylor's concurrence reveals that the implied assertions that he was discussing were not, in fact, assertions. ***See id.*** at 506-507. Instead, the utterance could only be considered an assertion if several assumptions were made. The example discussed by Justice Saylor involved the prosecution's introduction of a letter from a codefendant containing a fabricated alibi. ***Id.*** at 506 (citation omitted). The implied assertion that concerned Justice Saylor required the jury to assume "the author needs a false alibi, because he has no explanation for his conduct consistent with his innocence, because he is guilty[.]" ***Id.***

determine the objective intent of an individual, attempting to ascertain an individual's subjective intent, when that individual is not testifying in court, is even more difficult. "[R]are is the occasion when a party lays bare his or her subjective intent[.]" **United States v. Fletcher (In re Fletcher)**, 489 B.R. 224, 234 (Bankr.N.D. Okla. 2013); **see also Commonwealth v. Syre**, 489 A.2d 1340, 1346 (Pa. 1985) (Zappala, J. dissenting) ("In the absence of the rare direct expression of an actor's subjective intent and state of mind, the *mens rea* must necessarily be proven by circumstantial evidence and inferences arising from the actor's words and deeds."). Thus, the second approach is unworkable. Instead, objective indicia should be used to determine whether a question includes an assertion.

Therefore, we agree with those jurisdictions that have held a question can be hearsay if it contains an implied assertion offered for the truth of the matter. This approach ensures that the substance of an utterance, not its grammatical form, controls whether the utterance is admissible. Furthermore, such an interpretation of Rule 801 advances the policy goals of the hearsay rules by excluding out-of-court utterances that are clearly meant to assert the truth of a matter. Although it may require more inquiry than a bright-line approach which considers all questions to be non-assertive, it is still workable, unlike consideration of a declarant's subjective intent. Courts are repeatedly asked, when making evidentiary rulings, to consider objective factors to determine the intent of a party. We are

confident that the trial courts of this Commonwealth will be able to determine if a question includes an implied assertion. Accordingly, we hold that when a question includes an implied assertion, the question constitutes a statement for the purpose of Rule 801(a). If that statement is offered for the truth of the matter asserted, it is hearsay and is generally inadmissible.

In this case, the questions asked by Victim clearly included an implied assertion. In particular, the questions included the implied assertion that Victim had not taken "anything from anybody" and that Victim did not "take anything from ["Bey"] or the house." The questions also include the implied assertion that "Bey" did not believe Victim. N.T., 3/1/11, at 65. Although we hold that the questions by Victim were assertions, we conclude that the trial court's alternative holding, that Grandmother's testimony was admissible under Pennsylvania Rule of Evidence 803(3), was correct.

> That Rule provides that:
>
> The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness
>
> * * *
>
> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health. A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only if it relates to the execution, revocation, identification, or terms of declarant's will.

Pa.R.Evid. 803(3).

"Generally, out[-]of[-]court statements by homicide victims are admissible when they are relevant to show proof of motive or malice." *Commonwealth v. Kunkle*, 79 A.3d 1173, 1185 (Pa. Super. 2013),[11] *citing Commonwealth v. Luster,* 71 A.3d 1029, 1041 (Pa. Super. 2013) (*en banc*), *appeal denied*, 83 A.3d 414 (Pa. 2014);[12] *Commonwealth v. Puksar,* 740 A.2d 219, 225 (Pa. 1999). In *Puksar*, our Supreme Court held that the victim's statement that he had a dispute with the defendant over model trains was admissible under the state of mind exception. *Puksar*, 740 A.2d at 225.

---

[11] In *Kunkle*, this Court held that "statements from the decedent that he was scared of [the defendant] and that if he were to end up dead it would be [the defendant's] fault" were admissible under the state of mind exception. *Kunkle*, 79 A.3d at 1185 (internal quotation marks and citation omitted).

[12] In *Luster*, this Court, sitting *en banc*, held that the victim's statements "that she was fearful that [the defendant] was going to do something real bad to her, and . . . that she was scared [the defendant] was trying to kill her" were properly admitted under the state of mind exception. *Luster*, 71 A.3d at 1041 (internal quotation marks omitted). Five judges in *Luster* rejected three judges' view that, under *Commonwealth v. Levanduski*, 907 A.2d 3 (Pa. Super. 2006) (*en banc*), *appeal denied*, 919 A.2d 955 (Pa. 2007), the victim's statements were not admissible under the state of mind exception. *See Luster*, 71 A.3d at 1060-1061 (Ott, J. concurring in part and dissenting in part) (discussing *Levanduski*).

In *Commonwealth v. Green*, a three-judge panel of this Court used the same reasoning as the three-judge minority in *Luster* in holding that a victim's statement that she was afraid of the defendant was not admissible under the state of mind exception. 76 A.3d 575, 579–582 (Pa. Super. 2013), *appeal denied*, 87 A.3d 318 (Pa. 2014). However, as Judge Strassburger correctly noted, the majority in *Green* did not cite (or discuss) *Luster*. *Id.* at 587 (Strassburger, J. concurring).

- 13 -

In this case, Victim's questions to Grandmother showed that an individual named "Bey" had a motive to kill Victim. Specifically, Bey believed that Appellant had taken something from somebody. Bey also believed that Victim was not in Grandmother's house earlier in the day. This situation is akin to **Puksar** as Victim's statements showed that there was a dispute between Victim and Bey. Thus, Victim's assertion was clearly relevant to show that Bey had a motive to kill Victim. As such, it was admissible under Pennsylvania Rule of Evidence 803(3). Accordingly, the trial court did not err by admitting Grandmother's testimony regarding her conversation with Victim prior to the murder.

In his second issue on appeal, Appellant argues that the trial court abused its discretion in permitting Commonwealth's Exhibit 40 (the statement made by Hyman, the Commonwealth's key witness, with the photo array presented to Hyman attached) to be sent back with the jury during deliberations. Pennsylvania Rule of Criminal Procedure 646 provides, in relevant part, that, "Upon retiring, the jury may take with it such exhibits as the trial judge deems proper[.]" Pa.R.Crim.P. 646(a). "[W]hether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." **Commonwealth v. Dupre**, 866 A.2d 1089, 1102 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005) (citation omitted).

Hyman testified that he was present when Victim was shot. *See* N.T., 3/1/11, at 90. He further testified that he did not see the shooter in the courtroom that day. *Id.* However, in a prior statement to police, he had identified Appellant as the shooter. *See* Commonwealth's Exhibit 40. When Hyman refused to identify Appellant at trial, the Commonwealth attempted to impeach his testimony with his prior inconsistent statement to police, which was marked as Commonwealth's Exhibit 40. Originally, when the jury retired to deliberate, Commonwealth's Exhibit 40 was not sent back with it. However, the jury requested to see Commonwealth's Exhibit 40 during its deliberations. Appellant objected to the exhibit being sent back with the jury; however, the trial court overruled the objection.

Appellant contends that this case is similar to *Commonwealth v. Russell*, 322 A.2d 127 (Pa. 1974). In *Russell*, a prosecution witness who had previously implicated the defendant exonerated him when called at trial. *Id.* at 130. The prosecution sought to impeach the witness' testimony by introducing a prior inconsistent statement. *Id.* at 130-131. "The exhibit was permitted in evidence solely for the purpose of impeachment." *Id.* at 131. Thus, our Supreme Court stated that allowing the exhibit to go back with the jury was an abuse of discretion. *Id.*

However, in this case there is no indication that the statement was admitted solely for the purpose of impeachment. To the contrary, it is clear that the prior inconsistent statement was admitted as substantive evidence.

*See* N.T., 3/3/11,[13] at 14-15 (trial court discussing charging the jury with Pennsylvania State Standard Criminal Jury Instruction 4.08A(2)); *id.* at 125 (trial court giving Pennsylvania State Standard Criminal Jury Instruction 4.08A(2)). Appellant did not object to the statement being admitted as substantive evidence.[14] *See id.* at 21. Therefore, **Russell** is distinguishable from the case at bar.

Instead, we find that this case is similar to **Commonwealth v. Causey**, 833 A.2d 165 (Pa. Super. 2003), *appeal denied*, 848 A.2d 927 (Pa. 2004), **Commonwealth v. Merbeh**, 411 A.2d 244 (Pa. Super. 1979), and **Commonwealth v. Riggins**, 386 A.2d 520 (Pa. 1978). In **Causey**, like in the case at bar, a prior statement was read into the record during trial. **Causey**, 833 A.2d at 177. Also like in the case at bar the jury, during its deliberations, requested that it be furnished a copy of the statement. **Id.** at 178. The trial court agreed to send back a copy of the statement to the jury. We held that "a prosecution witness'[] statement entered into trial evidence as an exhibit may be sent out to the jury." **Id.** Similarly, in

---

[13] The notes of testimony are labeled as being from March 11, 2011. However, it is clear from the record that they are from March 3, 2011. The file from which the notes were transcribed was named "3-3-11.txt." Furthermore, the notes of testimony fit logically between the notes of testimony of March 2, 2011 and March 4, 2011.

[14] The statement was properly admitted as substantive evidence. **See Commonwealth v. Fletcher**, 750 A.2d 261, 276 n.19 (Pa. 2000), *abrogated on other grounds*, **Commonwealth v. Freeman**, 827 A.2d 385 (Pa. 2003), *citing* **Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992).

- 16 -

*Merbeh*, we concluded that allowing a witness' prior inconsistent statement to go out with the jury was not an abuse of discretion. *Merbeh*, 411 A.2d at 247. In *Riggins*, the trial court allowed the jury to receive the victim's statement that had been recorded by a police officer on a napkin. *Riggins*, 386 A.2d at 525. Our Supreme Court concluded that it was not an abuse of discretion for the trial court to send the statement back with the jury because the defendant had failed to object when the napkin was entered into evidence and it did not place undue weight on the victim's statement. *Id.* at 525-526.

In this case, as in *Riggins*, Appellant did not object when Commonwealth's Exhibit 40 was entered into evidence. The jury's request for the statement showed that it was weighing whether to believe his testimony at trial or his prior inconsistent testimony. His testimony at trial was easy to understand at it was elicited through the traditional question and answer format. However, Hyman's prior inconsistent statement was entered into evidence with the assistant district attorney reading both the question and the answer and then asking Hyman if she had read the statement correctly. Thus, the jury may have been seeking to read the statement in a typical question and answer format. This did not place undue weight on the statement, rather it gave the statement the same weight as Hyman's testimony. For these reasons, we conclude the trial court did not abuse its discretion in permitting Hyman's statement to go out with the jury.

*See Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772 (Pa. 2013) ("[C]ourts [in this Commonwealth] have rarely found that materials given to juries during deliberations constitute reversible error.").

In his third issue, Appellant contends that the trial court erred by failing to grant a mistrial after Detective Levi Morton testified, "When we have information either through our investigation or from eyewitnesses out on the street as to a name of an individual that is a possible suspect, that person named, if they are found in our database, we will put them in a photo [array]." N.T., 3/2/11, at 41. Appellant contends that Detective Morton's reference impermissibly implied to the jury that Appellant had previously been convicted of a crime and, therefore, his photo was in the police database. Appellant timely moved for a mistrial at the conclusion of Detective Morton's testimony. Appellant made a strategic decision not to request a cautionary instruction so as not to draw attention to the matter.

"A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013) (citation omitted). "In reviewing a trial court's denial of a motion for a mistrial, our standard is abuse of discretion." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013) (citation omitted).

"Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Fletcher*, 41 A.3d 892, 894–895 (Pa. Super. 2012), *appeal denied*, 57 A.3d 67 (Pa. 2012) (citation omitted).

This Court has held "that after the reference to a photograph [selected from police files] the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Harris*, 533 A.2d 727, 731 (Pa. Super. 1987), *appeal denied*, 549 A.2d 914 (Pa. 1988) (citation omitted). We conclude that the jury could not reasonably infer from Appellant's photograph being in the police database that Appellant had a prior criminal conviction. Our Supreme Court has held that "the unexplained possession by the police of a defendant's photo [is not necessarily] proof that the defendant had a previous conviction." *Commonwealth v. Brown*, 512 A.2d 596, 598 (Pa. 1986) (McDermott, J. opinion announcing the judgment of the court). Instead, "[o]ne's picture may be in the possession of the police even though the person was neither charged, tried[,] nor convicted of any crime. . . . At the most it proves only that the police had a photo of the defendant on file." *Id.* at 598-599. Thus, in *Brown* our Supreme Court held that a jury could not reasonably infer from police possession of the defendant's photograph that the defendant had previously been convicted of a crime. *Id.* at 599-600. Although, our Supreme Court has held that a

defendant is entitled to a cautionary instruction upon request, *id.*, in this case Appellant made a strategic decision to decline such an instruction.

The situation in the case at bar is similar to the situation in *Commonwealth v. Young*, 849 A.2d 1152 (Pa. 2004). In that case, the police officer testified that the photos that were shown to a witness were taken from a database containing photographs of people "who have had contact with the police." *Id.* at 1156. Our Supreme Court held

> that the explanation of how the photo imager compiled photographs and the statement regarding 'contact with the police' focused only on prior contact with the police and did not reasonably imply prior criminal conduct. The prior contact with the police could have occurred under a variety of circumstances that were not criminal in nature including involvement in a motor vehicle accident or violation, as a witness to a crime, or as a victim of a crime.

*Id.*

In this case Detective Morton's brief testimonial reference was even more innocent than the police officer's testimony in *Young*. Detective Morton did not state that the database contained photographs of individuals that had previous contact with the police. Instead, he merely stated that it was a police database. This could mean that the database included driver's license or firearms license photographs. Even the most extreme interpretation of Detective Morton's testimony only matches that of the police officer in *Young*. As our Supreme Court determined that the statement in *Young* did not result in prejudice to the defendant, we conclude that Appellant was not prejudiced by Detective Morton's reference

to the police database. Accordingly, Appellant's third issue on appeal is without merit.

In his fourth issue on appeal, Appellant contends that the trial court erred in admitting double hearsay regarding Hyman's motivation for testifying untruthfully. This testimony involved a conversation that Detective John Cahill had with Hyman in the courthouse hallway on March 1, 2011. This issue is waived. Pursuant to Pennsylvania Rule of Appellate Procedure 302, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). With respect to evidentiary rulings, "Error may not be predicated upon a ruling that admits [] evidence unless . . . a timely objection, motion to strike[,] or motion *in limine* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" Pa.R.Evid. 103(a)(1).

In this case, Appellant objected to the admission of Detective Cahill's testimony regarding his conversation with Hyman related to phone calls Hyman's brother had received. **See** N.T., 3/2/11, at 3, 5. However, it was clear from the context of the objection that Appellant was objecting on the basis of relevancy, and not on the basis of hearsay. Appellant's counsel objected stating, "I would object to the admission of that testimony. I don't believe any door was opened that would permit that type of testimony." **Id.** at 5. He continued, "My position is by asking [Detective Cahill] specifically what happened to Anthony Hyman alone does not open the door to allow

evidence presented about the contacts made by whoever to his brother." *Id.* at 6. The trial court responded, "These questions go to his motivation as to why he [identified] one time and didn't [identify] the other time." *Id.* This exchange shows that Appellant's objection was based on relevancy grounds. *Cf. Leaphart v. Whiting Corp.*, 564 A.2d 165, 171 (Pa. Super. 1989), *appeal denied*, 577 A.2d 890-891 (Pa. 1990) (using the term "open the door" while discussing relevancy). Nowhere did Appellant object based on hearsay and the trial court never discussed hearsay when ruling on the objection. As Appellant failed to state the specific grounds of his hearsay objection in the trial court, and the specific grounds were not apparent from the record, the issue is not preserved for appellate review. *See Commonwealth v. Lopez*, 57 A.3d 74, 82–85 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013) (failure to specify that objection was based on hearsay resulted in issue being waived on appeal).

Appellant's final issue challenges the trial court's jury instruction regarding flight. In order to preserve a claim that a jury instruction was erroneously given, the Appellant must have objected to the charge at trial. *See Commonwealth v. Spotz*, 84 A.3d 294, 318 n.18 (Pa. 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as

error, unless specific objections are made thereto before the jury retires to deliberate."). As our Supreme Court has explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

**Commonwealth v. Pressley**, 887 A.2d 220, 224 (Pa. 2005) (footnotes and citations omitted); **see Commonwealth v. Garang**, 9 A.3d 237, 244–245 (Pa. Super. 2010) (citations omitted); **Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted).

In this case, Appellant objected to the flight charge at the charging conference. **See** N.T., 3/3/11, at 12 ("Can we talk about flight for one second? Note my objection to the inclusion of a flight charge."). However, after the court read the charge to the jury, the court asked, "Counsel, do you need to see me before we go further?" **Id.** at 118. Appellant's counsel responded "No." **Id.** As Appellant responded in the negative when asked if any additions or corrections to the jury charge needed to be made, he has waived his final issue.

In sum, we hold that a declarant's question is a statement for purposes of Pennsylvania Rule of Evidence 801(a) if it includes an implied assertion. We conclude, however, that Victim's hearsay statement in this

case was properly admitted under Pennsylvania Rule of Evidence 803(3). We conclude that the trial court did not abuse its discretion in permitting Hyman's prior inconsistent statement to be sent back with the jury. We also conclude that the trial court did not abuse its discretion in refusing to declare a mistrial after a witness referenced a police database as the source of Appellant's photograph. Appellant has waived his hearsay objection to the police officer's testimony regarding phone calls to Hyman's brother. Appellant has also waived his objection to the jury instructions because he failed to object after the jury had been charged. As Appellant is not entitled to relief on any of his claims of error, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014