J-A04007-22

2022 PA Super 99

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA FARKAS | : | |
| | : | |
| Appellant | : | No. 2070 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 7, 2020
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001997-2019

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY LAZARUS, J.:                              **FILED MAY 27, 2022**

Patricia Farkas appeals from the judgment of sentence, imposed in the Court of Common Pleas of Northampton County, after she was convicted of Medicaid Fraud—Submission of False Information (F-3),[1] and sentenced to 4-23 months' imprisonment, a probationary term of 37 months, and restitution in the amount of $14,513.71. After careful review, we affirm.

In November 2015, Farkas, a licensed practical nurse (LPN), worked for Medicaid, in a "participant[-]directed services" program (Program), as an in-home caregiver for her elderly father, Walter Farkas (Walter/participant). Walter suffers from early-onset Alzheimer's and requires 24-hour-a-day supervision. The Program allows family members to be compensated for

_____

[1] 62 P.S. § 1407(a)(1). Farkas was also charged with Medicaid Fraud—Misrepresented Services (Count II), *id.* at § 1407(a)(7), and Theft by Deception—False Impression (Count III), 18 Pa.C.S.A. § 3922(a)(1). She was acquitted of these two offenses.

providing care within a patient's home, rather than having the patient be cared for at an institutional facility.

Farkas, as a direct-care worker (DCW), was employed by and supervised by Services Access Management (SAM), an agency that coordinates care services for elderly, infirm adults in the community. In accordance with an Individual Service Plan (Plan), which set forth specific goals tailored to Walter's needs, Farkas was originally authorized to work up to 12 hours a day, for an 84-hour[2] work week.[3] Farkas' boyfriend, John Murray, was designated as a "common law employer" (CLE)—a person who oversaw, approved and submitted Farkas' timesheets.[4] In addition to taking care of Walker, Farkas

---

[2] The remaining 12 hours of daily care were provided by other family members who were not compensated.

[3] Soon after she started working for the Program, a service coordinator supervisor advised Farkas that her weekly hours should be decreased (initially to 70 and then later recommended 56) to prevent "burnout," and that another DCW should be registered to cover the remaining weekly hours. When Farkas failed to reduce her weekly hours, Farkas was no longer approved to work with a participant directed services program, but was offered only agency model services, where her hours are monitored by an agency. In December 2017, Comforting Home Care (CHC), a non-medical personal care agency, employed Farkas as Walter's caregiver. N.T. Jury Trial, 9/1/20, at 136-38. Farkas' signed employment agreement with CHC specifically required her to use the client's telephone to "clock in/clock out [u]pon [her] arrival and departure at the client's home. Commonwealth's Exhibit 11, at [3]. This record represented Farkas' "official time sheet[,] which [was] used to create [her] payroll." *Id. See also* N.T. Jury Trial, 9/1/20, at 146-47. Farkas worked for CHC from December 1, 2017 to September 14, 2018. *Id.* at 150.

[4] An individual who approves a Program worker's time sheets is known as a CLE. N.T. Jury Trial, 8/31/20, at 89. Although it was intimated at trial that Dawn Mulvihill replaced Murray as Farkas' CLE in June of 2017, Mulvihill
*(Footnote Continued Next Page)*

also worked at other non-Medicaid healthcare facilities, a practice that was not prohibited by the Program.

Special Agent Ryan King (Agent King) of the Medicaid Fraud Control Section of the Pennsylvania Office of the Attorney General investigated allegations that Farkas was "submitting more hours than what was authorized for her, and[,] on two occasions during home visits with [SAM,] she was not present [at Walters' home,] yet billed as though those services were provided." N.T. Jury Trial, 9/1/20, at 177. Farkas' time sheets reflected that she worked her 12-hour daily shifts for Walter from 7:00 a.m. until 7:00 p.m. Agent King compiled Farkas' records from the other employers she worked for; those records showed that Farkas was collecting income for other jobs during the same 7:00 a.m. to 7:00 p.m. period that she allegedly was caring for Walter. Thus, Agent Ryan presumed that Farkas was double billing by submitting timesheets to the Program and being compensated by Medicaid for hours when she was working elsewhere.

Farkas was charged with Medicaid Fraud—Submission of False Information (Count I), Medicaid Fraud—Misrepresented Services (Count II), and Theft by Deception—False Impression (Count III). A three-day jury trial was held from August 31 through September 2, 2020. Teresa Reeser (Public

---

testified that she never cared for Walter or acted as a CLE for Farkas. *Id.*, 9/1/20, at 117-20.

Partnerships' (PPL)[5] employee),[6] Emily Laurent (SAM employee), Dawn

Mulvihill (Farkas family friend), Margaret Skibinski (COO and Director of

Nursing for Comforting Home Care), Agent King, John Murray, and Farkas

_____

[5] PPL provided financial management services to Walter. After PPL receives a direct-care worker's timesheet, it directly bills Medicaid for the amount it pays to the direct-care worker as well as the employer costs, which would include FICA, Social Security matching, federal unemployment, state unemployment, and workers' compensation. N.T. Jury Trial, 8/31/20, at 80.

[6] At trial, Teresa Reeser testified that as a direct-care worker (DCW), Farkas could create her own template for a weekly time sheet. Reeser testified that when the DCW fills out the time sheet, she "needs to ensure that the . . . in[-]and[-]out time accurately represents the time for service is provided on those dates." N.T. Jury Trial, 8/31/20, at 71. Specifically, Reeser testified that the DCW must "confirm[] the accuracy of the time sheet [and] submit[] the time sheet to the common law employer for approval [and then t]he common law employer must log into the [PPL web] portal, review the time sheet, verify that those were the dates and times and hours that services were provided[,] and then approve the time sheet." *Id.* at 72. "Once the common law employer approves the time sheet, it gets submitted into [the] PPL system for processing." *Id.* While the system automatically populates the total number of weekly hours a DCW has worked, the total number is based on the in and out times that the DCW has specifically input on her time sheet. *Id.* at 73. Finally, before the system will permit a DCW to submit her timesheet, she has to check a box that says her "time entry accurately represents the allotted hours and approved rate of pay from the most recent individual budget. Misuse of the funds provided by Medicaid for services is considered Medicaid fraud." *Id.* at 74.

Resser also testified that, as a DCW, Farkas was required to enter her own "in" time and "out" time and that the times must accurately represent the hours during which she was providing the services for Walter. N.T. Jury Trial, 8/31/20, at 66-67, 70. Finally, Resser testified that even using a template provided by the billing portal, a DCW would still have to accurately designate her exact hours worked, *id.* at 70, as the "in and out times" are not prepopulated, but are directly input by the DCW. *Id.*

testified at trial.[7]  After the jury retired, the judge received a written request to have "all exhibits of evidence" sent back with the jury during deliberations. N.T. Jury Trial, 9/2/20, at 155.  The trial judge granted the jury's request and permitted all 21 of the Commonwealth's exhibits admitted at trial to go back with the jury.  *Id.* at 165-66.  Farkas, however, objected to Commonwealth Exhibits 19-21 being sent back with the jury, arguing that they were akin to expert reports.  *See id.* at 158-66.  The jury ultimately convicted Farkas of Count I and acquitted her of Counts II & III.

On October 7, 2020, Farkas was sentenced to 4-23 months' imprisonment,[8] a probationary term of 37 months, and restitution in the amount of $14,513.71.  The court calculated the restitution[9] owed by adding up the total amount Farkas was paid by Medicaid for overlapping hours—hours

---

[7] Two character witnesses, Glenda Gerena and Peggy Jean McGuire Kuhns, testified at trial with regard to Farkas' reputation as an honest individual.

[8] The crime, graded as a third-degree felony, had an offense gravity score (OGS) of five and a prior record score (PRS) of zero.  According to the Sentencing Guideline matrix, a standard-range sentence for such an offense is R[estorative] S[antions]-nine months.  As a third-degree felony, the statutory maximum sentence would be seven years in prison and a fine of $15,000.  Although not stated, we note that there may be collateral consequences to this conviction which will implicate her ability for future employment.  Those are not part of the record and we do not consider them here.

[9] This is not a case where the jury was left to determine the amount of restitution that was owed, despite evidence that Farkas worked many hours for Walter, but just not necessarily daily between 7 AM to 7 PM.  The jury apparently either rendered a compromise verdict, acquitting her of two of the three charges, or determined that Farkas' testimony was not credible.

when Farkas was not actually providing care for Walter under the Program, but was billing for those times.[10]  Farkas was

> At sentencing the trial court noted the following:
>
> According to the [presentence investigation report], it indicates that the Commonwealth is seeking restitution in the amount of $14,513.71, and is seeking that money be paid[—]they have actually made a request, and that was noted and provided to you before trial that they were seeking under the [s]tatute, the Medicaid Fraud Statute, notice of intent to seek treble damages, which is meaning not to just . . . order you to pay back the [$]14,500[,] but three times that amount as a penalty.  So that's what they're requesting at this time.  I will note that for the record.
>
> \*     \*     \*
>
> I'm not going to fine you in this case, but I am going to order restitution in the full amount of $14,513.71.  I am not going to treble those damages.  I'm not going to multiply those damages in any fashion.  I will keep it basic.  It's a sizable amount of money to begin with, and you're going to need to get that paid back within the period of time provided for here.
>
> You will also be ordered to pay with that the statutory interest that would be accumulated under the section regarding the amount and the time that it takes for you to pay that back.  I am going to order that you pay costs and fees in the sentence of this case as well.  And I will make [you] eligible for work release.

N.T. Sentencing, 10/7/20, at 22-23.

---

[10] Although unexplained, on at least one occasion Farkas reportedly documented and was paid for working more than 24 hours in a given day. *See* N.T. Jury Trial, 9/1/20, at 211 (reporting for 24-hour day, Farkas' time sheet showed she worked total of 30 hours and 14 minutes).

Farkas filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She presents the following issues for our review:

(1) Did the trial court commit reversible error by allowing the Commonwealth's expert report to be shared with the jury during their deliberations?

(2) Did the trial court impose an illegal sentence where the amount of restitution ordered was neither a direct result of [Farkas'] criminal conduct, nor was it supported by the record evidence?

Appellant's Brief, at 4 (unnecessary capitalization omitted).

In her first issue on appeal, Farkas contends that the trial court abused its discretion in permitting the Commonwealth's Exhibit 19 (spreadsheet compiling hours Farkas reported at each job in stated time period), Exhibit 20 (displaying ten detailed examples of overlapping work hours and showing reproduced time sheets from non-Medicaid employers alongside Medicaid work hours Farkas reported), and Exhibit 21 (compiling instances where Farkas purportedly worked more than 24 hours in one day) to be sent back with the jury during deliberations. She argues that it was reversible error to allow the jury to receive the exhibits because they essentially amounted to a summation of the Commonwealth's expert's opinions and, thus, the material unduly influenced the jury. We disagree.

The determination as to whether an exhibit should be permitted to go out with the jury during deliberations "is within the sound discretion of the trial judge, and such decision will not be overturned absent an abuse of

discretion." ***Commonwealth Parker***, 104 A.3d 17, 25 (Pa. Super. 2014) (citations omitted). Pennsylvania Rule of Criminal Procedure 646 provides, in relevant part, that "[u]pon retiring[,] the jury may take with it such exhibits as the trial judge deems proper." Pa.R.Crim.P. 646(A).

Here, the Commonwealth's three exhibits (19-21) contained no expert opinion; they merely collected the same facts (number of hours worked and overlapping hours) included in the Commonwealth's other exhibits. Moreover, even if the exhibits had contained expert opinions, expert reports are not specifically precluded from jury deliberations under Rule 646. ***See*** Pa.R.Crim.P. 646(C) (rule specifically prohibits jury to have transcript of trial testimony, copy of defendant's written or recorded confession, copy of information or indictment, and written jury instructions), ***but see id.*** at (B) (jury may have written copies of portion of judge's charge on elements of offenses, lesser included offenses, and any defense upon which jury has been instructed). Because the three Commonwealth exhibits facilitated the jury's synthetization of pertinent information necessary to arrive at a verdict on the issue of Medicaid fraud, we do not find that the trial court abused its discretion by permitting the exhibits to go to the jury during deliberations. ***Parker***, ***supra***.

In his second issue, Farkas asserts that the trial court's restitution sentence is illegal because the Commonwealth did not prove a "loss" directly caused by the alleged "false information" Farkas provided to Medicaid. Specifically, Farkas argues that because the jury acquitted her of Count II

(misrepresented Medicaid services) and Count III (theft by deception), **see supra** at n.1, the jury did not believe that the Commonwealth suffered any attendant loss. Accordingly, she asserts that because the "false information" was not causally connected to the Commonwealth's "property," restitution should not have been ordered as part of her sentence.

To support her restitution argument, Farkas cites to case law that discusses restitution imposed as part of a direct sentence under 18 Pa.C.S.A. § 1106(a) of the Crimes Code.[11] **See Harriott**, **supra** (compiling caselaw

---

[11] Section 1106 provides:

> § 1106. **Restitution for injuries to person or property**.
>
> (a)  General rule. — Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S.A. § 1106(a). "With regard to appeals stemming from the imposition of restitution as a condition of the judgment of sentence under section 1106, restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable." **Commonwealth v. Dohner**, 725 A.2d 822, 824 (Pa. Super. 1999) (internal citations and quotations omitted). Moreover,

> [i]n computing the amount of restitution, the court shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate. Because restitution is a sentence, the amount ordered must be supported by the record; it may not be speculative or excessive. The amount of a restitution order is

*(Footnote Continued Next Page)*

discussing section 1106's statutory language "directly resulting from the crime" requires causal connection between crime and loss). Instantly, Farkas was convicted of the following offense under the Public Welfare Code:[12]

> **§ 1407. Provider prohibited acts, criminal penalties and civil remedies**
>
> **(a)** It shall be unlawful for any person to:
>
> **(1) Knowingly** or intentionally **present for allowance or payment any false or fraudulent claim or cost report for furnishing services or merchandise under medical assistance**, or to knowingly present for allowance or payment any claim or cost report for medically unnecessary services or merchandise under medical assistance, or to knowingly submit false information, for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services or merchandise under medical assistance,[13] or to knowingly submit false information for the purpose of obtaining authorization for furnishing services or merchandise under medical assistance.

---

> limited by the loss or damages sustained as a direct result of defendant's criminal conduct and by the amount supported by the record.

*Id.* "Due to the language 'directly resulting from the crime,' restitution is proper only if there is a direct causal connection between the crime and the loss." *Commonwealth v. Harriott*, 919 A.2d 234, 238 (Pa. Super. 2007). "The sentencing court applies a 'but for' test in imposing restitution; damages which occur as a direct result of the crimes are those which would not have occurred but for the defendant's criminal conduct." *Commonwealth v. Wright*, 722 A.2d 157, 159 (Pa. Super. 1998).

[12] *See* Title 62, Chapter 1, Article XIV (Fraud and Abuse Control), §§ 1401-1418.

[13] Initially, Farkas was authorized to work an 84-hour work week. Because Farkas' weekly submitted hours did not exceed 84 hours, she arguably did not purport to obtain greater compensation than that to which she was legally entitled.

62 P.S. § 1407(a)(1) (emphasis added). "The penalties for violating the provisions of the Medicaid Fraud and Abuse Control Statute are set forth at 62 P.S. § 1407(b)(1)." ***Commonwealth v. Lurie***, 569 A.2d 329, 332 (Pa. 1990).[14] Subsection 1407(b)(1) provides:

> [(b)](1) A person who violates any provision of subsection (a), excepting subsection (a)(11), is guilty of a felony of the third degree for each such violation with a maximum penalty of fifteen thousand dollars ($15,000) and seven years['] imprisonment. A violation of subsection (a) shall be deemed to continue so long as the course of conduct or the defendant's complicity therein continues; the offense is committed when the course of conduct or complicity of the defendant therein is terminated in accordance with the provisions of 42 Pa.C.S. § 5552(d) (relating to other offenses). Whenever any person has been previously convicted in any state or Federal court of conduct that would constitute a violation of subsection (a), a subsequent allegation, indictment or information under subsection (a) shall be classified as a felony of the second degree with a maximum penalty of twenty-five thousand dollars ($25,000) and ten years['] imprisonment.

62 P.S. § 1407(b)(1). In addition to the penalties provided under subsection (b),

> **the trial court shall order any person convicted under subsection [1407](a):**

---

[14] In ***Lurie***, our Supreme Court stated that:

> The purpose of the Medicaid Fraud and Abuse Control Act is "to eliminate fraudulent, abusive[,] and deceptive conduct and practices that may occur." Introductory paragraph of Act 1980, July 10, P.L. 493, No. 105. In speaking of "fraudulent, abusive and deceptive" conduct, the legislature most certainly is referring to willful conduct as opposed to recklessness or negligence.

***Id.*** at 331. Thus, if Farkas' conduct were proven to be reckless and/or negligent, it would not rise to the level of intent necessary to prove fraud. ***Id.***

**(i) to repay the amount of the excess benefits or payments plus interest on that amount at the maximum legal rate from the date payment was made by the Commonwealth to the date repayment is made to the Commonwealth**[.]

*Id.* at § 1407(b)(2)(i) (emphasis added). Thus, it is mandatory under section 1407(b)(2)(i) to order a defendant, convicted under section 1407(a), to repay any excess payments he or she has fraudulently acquired, plus interest on that amount, to the Commonwealth.

In **Commonwealth v. Coleman**, 905 A.2d 1003 (Pa. Super. 2006), a defendant, convicted of Medicaid Fraud and related charges, claimed on appeal that the trial court had imposed an illegal sentence of restitution because neither the Department of Public Welfare nor the Attorney General were "victims" as defined in section 1106 of the Crimes Code. Our Court concluded that the defendant's argument was "misplaced, as there exists independent statutory authority to require the payment of restitution to the Department of Public Welfare." **See** 62 P.S. § 1407(b)(2)(ii).

Just as in **Coleman**, Farkas' argument is misplaced. As the trial court notes, the restitution Farkas was ordered to pay is "specifically authorized for any conviction arising from the Medicaid Fraud statute." Trial Court Opinion, 4/20/21, at 3. We agree and, thus, find her argument meritless. **See Lurie**, **supra**.[15]

_____

[15] This case presents a real conundrum. On the one hand, testimony indicates that Walter was well taken care of by family and friends and was not left to
*(Footnote Continued Next Page)*

Order affirmed.[16]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2022

---

the vagaries of care that might or might not have been as good in a facility. Although, admittedly, Farkas sometimes left Walter alone at home. *See* N.T. Jury Trial, 9/2/20, at 89-90 (Farkas admitting "on certain occasions" Walter had to be left alone when she had to work other overnight jobs), *but see id.* at 8-9, 12 (Farkas testifying Walter was never left alone). On the other hand, this case provides a clear example of how easily fraud can occur in this setting and the dangers of not reporting accurately actual hours worked as required by the statute. Due to our resolution of the issues on appeal, we will not opine on whether the Commonwealth was harmed to the extent restitution was claimed. It is best left to our Legislature to determine the risks v. benefits of home health care and how to best implement it.

[16] To the extent that Farkas's claim can be interpreted as a sufficiency of the evidence argument (lacking requisite intent to commit Medicaid Fraud), we would find this claim waived. Farkas' counsel acknowledged at oral argument that he did not raise, and, thus, preserve a sufficiency claim on appeal.