J. S42042/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
STEPHEN THOMAS WILLIAMS JR., :
:
Appellant : No. 3343 EDA 2014

Appeal from the Judgment of Sentence November 3, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division No(s).: CP-46-CR-0004783-2012

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED NOVEMBER 30, 2015**

Appellant, Stephen Thomas Williams, Jr., appeals from the judgment

of sentence of, *inter alia*, a one-year probation and restitution entered in the

Montgomery County Court of Common Pleas after his conviction for theft by

unlawful taking, theft of property lost, and receiving stolen property at a

nonjury trial.[1]  Appellant claims: (1) the evidence was insufficient to sustain

the convictions; (2) the trial court erred in admitting testimony regarding

the results of a "Find My iPhone" search; and (3) the verdicts were against

the weight of the evidence.[2]  We find an abuse of discretion in the trial

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a), 3924, 3925(a).

[2] We have reordered the claims set forth in Appellant's brief.

court's denial of the Appellant's motion for a new trial, vacate the judgment of sentence, and remand for further proceedings consistent with this memorandum.

The trial court summarized the Commonwealth's trial evidence as follows:

> [The complainant] was working at Genesis HealthCare in Glenside, Montgomery County, on April 28, 2012. As part of his duties, he was delivering a cart from the second floor to the maintenance office in the basement of the building. He proceeded to the basement using an elevator. Prior to entering the elevator, [the complainant] checked the time on his iPhone 4s and put it back in his pocket. After exiting the elevator, and while pushing the cart up a steep ramp toward the maintenance office, he heard a sound. Within twenty seconds, he arrived at the maintenance office, found his iPhone was missing and ran back to the area where he had heard the sound to look for it.
>
> While looking for the iPhone, [the complainant] encountered [Appellant], who asked if he had lost something. [The complainant] did not see anyone else in the area. [Appellant] began to help [the complainant] look for the iPhone. When it was not located, [the complainant] returned to the maintenance office to call the iPhone, but it went directly to voicemail. [The complainant] then used a computer in the maintenance office to access a "Find My iPhone"[3] application. The application did not indicate a

---

[3] As discussed below, the complainant described the application as follows: "It is an app that you use for your Apple devices that show you exactly where the location at for the device that you may have lost. That is why it is called the Find My iPhone app." N.T., 11/3/14, at 12. We take notice of the following:

> One important aspect of smartphone technology is the ability of these devices to identify, in real time, their geographic location, which data can be shared with certain

location for the iPhone at that time. A couple of days later, [the complainant] tried the application again and it tracked the iPhone to 436 Manton Street in Philadelphia. [The complainant] learned this was [Appellant's] address and made a report to police. In addition to the address matching information in [Appellant's] employment records, police used a LexisNexis program that indicated [Appellant's] address was 436 Manton Street in Philadelphia. The database of the Pennsylvania Department of Motor Vehicles also indicated the same address for [Appellant].

---

programs and providers to enable advanced functions. At present, three techniques are used to generate this information. The collection of cell-site data—the identification of the radio cell tower or towers nearest to the device—is the oldest geolocation technology . . . . Cell-site location is arguably the least precise of the three methods currently used, though that precision can be substantially enhanced through triangulation of signals from multiple towers. Global Positioning System (GPS) data is a technique by which radio signals are received by the smartphone from a system of satellites in geosynchronous orbit and interpreted by programs to provide highly accurate location data. Wireless geolocation operates by comparing the access points used by the smartphone to connect to the Internet against a database of known router locations. Depending on the quality of the information in the database, this method, though similar to cell-site location, can be far more accurate because wireless transmissions have a shorter range than cellular transmissions. Additional emerging geolocation technologies, including Bluetooth beacons, reportedly have the potential to pinpoint the location of a phone to a matter of inches.[ ]

*In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 137-38 (E.D.N.Y. 2013).

Trial Ct. Op., 2/5/15, at 1-2. We note the phone was not recovered by the complainant or the police, and the complainant purchased a replacement phone.

Appellant testified at trial. He denied seeing the complainant on April 28th or picking up his phone. He conceded his employment and official records listed his address as 436 Manton Street, but asserted he did not live there at the time of the incident. Appellant also called a coworker to testify that he no longer resided at 436 Manton Street.

The trial court, on November 3, 2014, found Appellant guilty of theft by unlawful taking, theft of property lost, and receiving stolen property. Appellant waived the preparation of a presentence report, and the court sentenced him that same day to concurrent probationary terms of one year for theft by unlawful taking and receiving stolen property, restitution of $211.99, a fine of $250.00, and costs. Appellant timely filed a post-sentence motion challenging the weight of the evidence, which the trial court denied on November 19, 2014.

Appellant timely filed a notice of appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. This appeal follows.

Appellant presents the following three questions, which we have reordered for review:

> ARE APPELLANT'S CONVICTIONS FOR THEFT BY UNLAWFUL TAKING, THEFT OF PROPERTY LOST OR MISPLACED, AND RECEIVING STOLEN PROPERTY

SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE OF RECORD?

DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT PERMITTED, OVER DEFENCE OBJECTION, TESTIMONY REGARDING THE VICTIM'S USE OF A "FIND MY iPHONE" APPLICATION TO ALLEGEDLY FIND THE LOCATION OF THE HIS LOST CELLULAR TELEPHONE?

DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL ON THE GROUND THAT THE GUILTY VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE?

Appellant Brief at 5.

Appellant first claims the evidence was insufficient to sustain his conviction for theft. According to Appellant, the evidence of his "mere presence" and "the address [the complainant] allegedly obtained using the 'Find My iPhone' application . . ." was too conjectural and speculative to conclude he took and kept the phone. *Id.* at 42-43. "The key piece of evidence" was the complainant's testimony that a "computer programme told him that his missing cellular telephone was located at 436 Manton Street in Philadelphia." *Id.* at 38-39. "There was no law enforcement co[rroboration] of the accuracy of the information [the complainant] claims he received from his use of the 'Find My iPhone' and the missing cellular telephone was never found in Appellant['s] possession or in a location that could be connected to him." *Id.* at 42. No relief is due.

Our standards of review are well-settled.

In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine whether the

evidence was sufficient to allow the fact finder to find every element of the crimes charged beyond a reasonable doubt. In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. When performing its review, an appellate court should evaluate **the entire record** and **all evidence received is to be considered, whether or not the trial court's rulings thereon were correct**. Additionally, we note that the trier of fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Galvin*, 985 A.2d 783, 789 (Pa. 2009) (citations omitted) (emphases added); *see also Commonwealth v. Yong*, 120 A.3d 299, 311 (Pa. Super. 2015) (reiterating this Court will not review sufficiency claim based on diminished record.).

"To uphold a conviction for theft by unlawful taking, the Commonwealth must establish the accused 'unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.'" *Galvin*, 985 A.2d at 791 (quoting 18 Pa.C.S. § 3921(a)). Theft of property lost is defined as follows:

A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S. § 3924. "Receiving stolen property is established by proving that the accused 'intentionally receives, retains, or disposes of movable property

of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.'" **Galvin**, 985 A.2d at 792 (quoting 18 Pa.C.S. § 3925(a)).

Instantly, Appellant's arguments focus on the evidence that he took control of the phone after the complainant dropped it. The trial evidence, when viewed in a light most favorable to the Commonwealth, provides three pieces of circumstantial evidence that Appellant took control of the phone. First, the complainant dropped his phone in the basement hallway between the elevator and the maintenance office. N.T., 11/3/14, at 8, 10, 17. Second, Appellant was the only person the complainant saw in that location when he returned to look for his phone less than a minute later. **Id.** at 10. Third, a tracking application located the phone at Appellant's address several days later. **Id.** at 12-13.

Because a review of the sufficiency of the evidence focuses on the quantum of evidence based on an undiminished record, **see Galvin**, 985 A.2d at 789; **Yong**, 120 A.3d at 311, we do not reassess or discount the record evidence that the complainant's electronic search revealed the phone was located at Appellant's address. Thus, the totality of the circumstances provided an adequate basis for the trial court to infer Appellant took control of the complainant's phone.

Appellant next claims the trial court erred in permitting the complainant to testify regarding the results of the tracking application. He argues the complainant's "testimony as to what the computer application told him does not fall within any of the exceptions" to the general rule excluding hearsay. Appellant's Brief at 27. Further, he contends the complainant's testimony violated the "best evidence rule" and suggests "the Commonwealth was required to produce either a copy of the computer screen . . . or a computer printout" of the results. *Id.* at 28-29.

In response, the trial court asserts Appellant waived his hearsay argument. Trial Ct. Op. at 6. It suggests it properly ruled there was an adequate foundation to admit the complainant's testimony, "subject to a determination of its weight." *Id.* The court further suggests "the best evidence rule did not apply" because the complainant did not have the means to generate an original writing and there was no evidence of a bad faith failure to produce a writing. *Id.* at 6-7.

The Commonwealth notes Appellant "alluded to, but never specifically raised, a hearsay objection" at trial. Commonwealth's Brief at 9. The Commonwealth, *arguendo*, notes that the complainant's testimony was not hearsay because it established the investigating detective's course of conduct when confirming Appellant's address. *Id.* at 11-12. As to Appellant's "best evidence" argument, the Commonwealth agrees with the trial court that an original writing was not required because "there was no

recording of the results of the tracking application." *Id.* at 14. Lastly, the Commonwealth argues any error in the admission of the complainant's testimony was harmless. *Id.* at 19-20.

We first consider whether Appellant has waived his hearsay argument. Appellant framed his objections to the subject testimony as follows:

> [Appellant's Counsel]: I have an oral motion in limine to exclude any testimony regarding a GPS tracking system that is vaguely referenced in the Affidavit of Probable Cause.
>
> THE COURT: What is the basis of your objection?
>
> *   *   *
>
> [Appellant's Counsel]: Judge, the Affidavit of Probable Cause makes a vague reference to, quote, GPS tracking feature. And it is alleged that this tracking feature tracked the missing phone to a particular address.
>
> So what we have is an out-of-court basically statement used to—as proof of the matter asserted.
>
> It would be the same thing and they provided no discovery on the GPS tracking.
>
> *   *   *
>
> . . . It just says GPS tracking feature, Your Honor. And I would submit to the Court much like a video that, first of all, they need a foundation. They need to lay a foundation that this GPS tracking system is actually something, that it is legitimate, that it has some sort of accuracy.
>
> And I would submit that I should be able to cross-examine on that foundation.
>
> THE COURT: Well, I think you do. But that will go to the weight of the evidence. I am going to deny your motion.

N.T. at 3-5. After the trial court's ruling, Appellant's counsel placed the following on the record: "[M]y objection to it is based on two reasons: One, the lack of foundation; and two, the best evidence rule."[4] *Id.* at 6.

We reiterate,

> Pursuant to Pennsylvania Rule of Appellate Procedure 302, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). With respect to evidentiary rulings, "Error may not be predicated upon a ruling that admits [ ] evidence unless . . . a timely objection, motion to strike[,] or motion *in limine* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" Pa.R.[E.] 103(a)(1).

*Commonwealth v. Parker*, 104 A.3d 17, 28 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015). "[A]n appellant may not raise a new theory for an objection made at trial on his appeal." *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003) (citation omitted).

Appellant's counsel initially suggested the complainant's testimony was hearsay because the purported location of the phone was being admitted for the truth of the matter asserted. Nevertheless, his arguments in support of the objection focused on a narrow set of claims based on foundation and the best evidence rule. *See* N.T. at 3-5. Thus, Appellant's current hearsay argument presents a new theory not properly developed at trial. *See Parker*, 104 A.3d at 28. Accordingly, we are constrained to find Appellant's

---

[4] Appellant's counsel renewed his objection during the complainant's testimony. However, those objections the same as his motion *in limine*. *See* N.T. at 11, 13.

- 10 -

hearsay argument waived, but will address his best evidence argument.
*See id.*; N.T. at 6.

Our standard of review is as follows:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal "unless that ruling reflects 'manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.'"

***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010) (citations omitted).

Pennsylvania Rule of Evidence 1002 states: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise."[5]  Pa.R.E. 1002.  Rule 1004, however, provides:

---

[5] Pennsylvania Rule of Evidence 1001 provides:

> (a) A "writing" consists of letters, words, numbers, or their equivalent set down in any form.

> (b) A "recording" consists of letters, words, numbers, or their equivalent recorded in any manner.

> \* \* \*

> (d) An "original" of a writing or recording means the writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, "original" means any printout—or other output readable by sight—if

An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:

(a) all the originals are lost or destroyed, and not by the proponent acting in bad faith;

(b) an original cannot be obtained by any available judicial process;

(c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

(d) the writing, recording, or photograph is not closely related to a controlling issue.

Pa.R.E. 1004 (a)-(d).

"[I]f the originals are not available at trial in criminal cases, through no fault of the Commonwealth, secondary evidence is permissible." *Commonwealth v. Dent*, 837 A.2d 571, 589 (Pa. Super. 2003) (citation omitted). "If the Commonwealth does not need to prove the contents of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording." *Id.* at 590 (citation omitted).

Following our review, we find no reversible error. As noted by the Commonwealth, the complainant's testimony was admissible for non-

_____

it accurately reflects the information. An "original" of a photograph includes the negative or a print from it.

Pa.R.E. 1001(a)-(b), (d).

hearsay purposes, that is, to establish a foundation for a course of conduct and not prove an element of an offense. *See* Commonwealth's Brief at 11-12. Thus, an "original" was unnecessary to show why the detective initiated an investigation into Appellant's association with 436 Manton Street. *See* Pa.R.E. 1002, 1004(d).

Moreover, even if the trial court admitted the complainant's testimony for the truth of the matter asserted, we discern no abuse of discretion in its reasoning that there were adequate explanations for the absence of an original writing. *See* Pa.R.E. 1004(a), (b); *cf. Commonwealth v. Lewis*, 623 A.2d 355, 358-59 (Pa. Super. 1993) (holding best evidence rule precluded officer's "secondary" evidence that video recording showed defendant's companion taking item from store shelf and explanation for unavailability of tape was unsatisfactory). Thus, we agree with the trial court that the best evidence rule did not preclude the admission of the complainant's testimony regarding the results of his electronic search for his phone and that Appellant's objections went to the weight rather than admissibility.

Appellant lastly claims the verdicts were against the weight of the evidence. He emphasizes that the complainant testified he had a "hunch" that Appellant had taken his phone, but he failed to consider he lost his phone in a different location. Appellant's Brief at 47-48. He also criticizes the limited investigation by police, which merely confirmed that the address

obtained by the complainant was that of Appellant's. *Id.* at 48-49. Appellant thus asserts that the trial court abused its discretion when denying his post-sentence motion seeking a new trial. Relief is due.

The following precepts govern our review.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the . . . verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

The trial court addressed Appellant's weight of the evidence claim as follows:

> The evidence credited by this court, including the testimony of [the complainant] and Detective John Cotton, demonstrates [Appellant] came into possession of the property of [the complainant] and kept it, despite know[ing] it rightfully belonged to [the complainant]. This court did not credit [Appellant's] testimony regarding the incident, particularly in light of his denial that he did not help [the complainant] look for the iPhone and was not even in the same area of the building at the time. Similarly, this court did not credit the testimony of [Appellant] and his co-worker regarding his address at the

- 14 -

time of the offense. Rather, this court found credible the testimony demonstrating that work records and public records linked [Appellant] to 436 Manton Street in Philadelphia. . . .

* * *

As discussed previously, the evidence credited by this court . . . amply demonstrated that [Appellant] came into possession of the property of [the complainant] and kept it . . . . [Appellant] therefore is not entitled to relief on his challenge to the weight of the evidence.

Trial Ct. Op. at 4-5, 8.

As noted above, circumstantial evidence was critical to the trial court's denial of Appellant's motion for a new trial. Although our review reveals inconsistencies in the complainant's testimony regarding where he dropped the phone in the basement,[6] it was within the province of the trial court, as finder of fact, to resolve those inconsistencies. Further, the gist of the complainant's testimony was unequivocal: he dropped his phone somewhere in the basement hallway and when he searched for the phone less than a minute later, Appellant was the only person he saw in the area.

However, the complainant's testimony regarding the day he lost his phone only established Appellant's presence in the area of the lost phone.

---

[6] For example, the complainant testified he believed he dropped his phone while pushing a cart up a ramp and heard an unusual sound. However, he testified on direct examination that he went from the elevator through a door to the ramp. Later, on cross-examination, he stated he went down the ramp and through the door to look for his phone, and then saw Appellant on the other side of the door. He further indicated Appellant looked like he was coming out of the bathroom.

- 15 -

The complainant's electronic tracking of his phone was the critical evidence underlying Appellant's conviction for unlawfully taking possession of the phone.

As the proponent of the evidence, the Commonwealth bore the burden of adducing indicia of reliability supporting the complainant's testimony regarding the results from the tracking application. *Cf. Commonwealth v. Bujanowski*, 613 A.2d 1227, 1233-34 (Pa. Super. 1992). The record, however, is devoid of any foundation upon which to conclude that his search was reliable or could produce the purported result. The complainant described the technology as one "that you use for your Apple devices that show you exactly where the location at for the device that you may have lost." *See* N.T. at 12. The investigating detective testified only that when the complainant reported the incident, he passed along a handwritten note bearing the 436 Manton Street address. The Commonwealth adduced no further evidence regarding the actual capabilities of the application used, *i.e.*, whether it could produce a specific street address, rather than depict a location on a map. Further, the Commonwealth failed to establish a foundation that the complainant possessed the experience or knowledge to use the application properly. Such indicia of reliability and authenticity were particularly important given the absence of any objective evidence of results of a tracking application.

Further, the record reveals no evidence establishing how long the complainant was able to track the phone at the location or address or whether the phone was stationary or moving. Thus, even assuming the complainant's testimony was reliable, it established no more than a passing connection to the purported address.

The totality of the evidence in this appeal may have been "so clear, direct, weighty, and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue." *See Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003) (citations omitted) (discussing clear and convincing standard). However, the beyond a reasonable doubt standard requires more. That latter standard applies in criminal cases "due to the gravity of the private interests affected[, and] a societal judgment that, given the severe loss that occurs when an individual is erroneously convicted of a crime, the public should bear virtually the entire risk of error." *Id.* "The heavy standard applied in criminal cases manifests our concern that the risk of error to the individual must be minimized even at the risk that some who are guilty might go free." *Id.* at 716 (citation omitted).

In light of the foregoing, the trial court's review of the record and its application of the relevant burden of proof evince an abuse of discretion in its denial of Appellant's motion for a new trial. Further, having reviewed the entire record, a conviction for unlawfully taking the complainant's phone

based on the Commonwealth's decision to prosecute based upon its acceptance of a hunch, a handwritten note with Appellant's address of questionable foundation, and a confirmation that the address was Appellant's "shocks the conscience." Thus, the court's order denying a new trial must be reversed.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Mundy notes dissent.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2015