J-S54002-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TAEVON MAURICE CARR | : | |
| | : | No. 731 WDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence April 6, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012279-2013

BEFORE: OTT, J., MOULTON, J., and FITZGERALD, J.*

MEMORANDUM BY OTT, J.: FILED OCTOBER 10, 2017

Taevon Maurice Carr appeals from the judgment of sentence imposed April 6, 2016, in the Allegheny County Court of Common Pleas. The trial court sentenced Carr to an aggregate term of 25 to 50 years' imprisonment, following his jury conviction of, inter alia, attempted homicide and criminal conspiracy, for his participation in the August 2013 shooting of Irvin Green and Tashawna Sutton. On appeal, Carr contends: (1) the trial court erred in failing to grant a mistrial; (2) the evidence was insufficient to support his conviction of attempted homicide; and (3) the sentence imposed was illegal. Because we agree Carr's sentence was illegal, we are compelled to vacate the sentence and remand for resentencing.

_____

* Former Justice specially assigned to the Superior Court.

The trial court summarized the facts presented during Carr's jury trial, as follows:

This matter arises out of the shooting of Irvin Green and Tashawna Sutton on August 1, 2013 in Clairton, Pennsylvania. The evidence at trial established that Green and Sutton left their home on Wylie Avenue in the early morning hours of August 1 to walk to a nearby banking machine to withdraw money from Green's account. Green and Sutton walked up Wylie Avenue to its intersection with Miller Avenue and turned right on Miller Avenue toward the banking machine. As they were walking on Miller Avenue, [Carr] and Dakota Halcomb[1] crossed the street in front of them. Both Green and Sutton knew [Carr] and Halcomb but did not speak with them. Green and Sutton continued onto the banking machine and after withdrawing the money, walked back up Miller Avenue to Wylie. As they turned onto Wylie Avenue, they again saw [Carr] and Halcomb standing on Wylie Avenue but they were now accompanied by Parrish Linnen and a fourth unidentified man. As soon as Green and Sutton turned onto Wylie Avenue, the four men turned and began walking down Wylie Avenue towards Green and Sutton's home but shortly thereafter Green and Sutton lost sight of them. Green and Sutton continued onto their house and as Sutton was unlocking the front door they began hearing gun shots and both Green and Sutton were immediately struck by the gun fire. Green testified that he fell but then started to get up and as he did he turned and saw three men coming out of the darkness from across the street walking closer to his house as they continued shooting. Green testified that all three had guns in their hands and he watched as they continued firing at him and Sutton as they approached within a few feet of them. Green identified [Carr], Linnen and Halcomb as the shooters. Green testified that he could clearly see their faces by the light from his front porch and he watched as they reloaded their guns. Green testified that he was shot six times and Sutton, who was also shot several times, fell to the ground just off their porch. Green testified that he then ran towards Sutton's

_____

[1] We note that the trial court refers to this co-conspirator as "Dakota Holcomb." However, the correct spelling of his last name is "Halcomb." See Commonwealth v. Halcomb, Docket No. 13609-2013. Accordingly, we have corrected the misspelling throughout the court's opinion.

mother'[s] home, which was about five houses away, and was pursued by [Carr] and Linnen. When he reached the house he turned and was shot by [Carr] in the shoulder and he fell to the ground. While lying on the ground, [Carr] stood over him and shot him in the face while Linnen was standing directly behind him. Green testified repeatedly that he immediately recognized [Carr] and Linnen and that he knew them from having lived in the Clairton area for much of his life and knowing their families.

Sutton also testified that as she began to open the door to their home she heard gun fire and was immediately hit. She fell to the ground and then tried to get up and as she did she was shot in the chest by Linnen. As she lay on the ground, Halcomb then stood over her pointing his gun and repeatedly pulled the trigger but it didn't fire. She then heard Linnen say, "Fuck that bitch. She is dead anyway." She then saw [Carr] and Linnen [] chase Green as he ran down the street. As she lay on the ground she called 911. Sutton also testified that she knew [Carr] and Linnen from living in Clariton and specifically testified that she had seen [Carr] in the community "thousands" of times. On cross[-]examination Sutton acknowledge[d] that she did not see [Carr] shooting.

The Commonwealth also presented the testimony of Sergeant Keith Zenkovich of the Clairton Police Department who testified that he arrived on the scene shortly after the shooting. After Green was placed into an ambulance [Sergeant] Zenkovich asked Green who shot him and he stated he was shot by [Carr] and "P.Money." [Sergeant] Zenkovich then went to the ambulance that Sutton was in and she identified the shooters as [Carr] and Linnen.

The Commonwealth also presented the testimony of Detective Steven Hitchings of the Allegheny County Police who also testified that he spoke to Green at the hospital later that morning and [Green] again identified [Carr] and Linnen as the shooters. [Detective] Hitchings also created [] photo arrays and returned to the hospital and presented the arrays to Green from which Green immediately identified [Carr] and Linnen as two of the shooters.

Trial Court Opinion, 1/9/2017, at 2-4 (record citations omitted).

Carr was subsequently arrested and charged with attempted homicide (two counts), criminal conspiracy, aggravated assault (two counts), robbery, recklessly endangering another person ("REAP") (two counts), persons not to possess firearms, carrying a firearm without a license, and possession of a firearm by a minor.[2]  On November 20, 2013, the trial court granted the Commonwealth's motion to try Carr's case jointly with the charges against Linnen (Docket No. 13602-2013).[3]  On January 15, 2016, a jury found Carr guilty of attempted homicide (two counts), criminal conspiracy, REAP (two counts), and possession of a firearm by a minor.[4]  He was acquitted of the remaining charges.[5]  On April 6, 2016, the trial court sentenced Carr to concurrent terms of 15 to 30 years' imprisonment for each count of attempted homicide, and a consecutive term of 10 to 20 years' imprisonment for criminal conspiracy, for an aggregate sentence of 25 to 50 years' imprisonment.[6]

_____

[2] See 18 Pa.C.S. §§ 901/2502, 903, 2702(a)(i) 3701, 2705, 6105(c), 6106(a)(1), and 6110.1(a), respectively.  Carr was also charged with one count of cruelty to animals, formerly 18 Pa.C.S. § 5511(a), however, the trial court granted a judgment of acquittal as to that charge on January 14, 2016.

[3] Although the trial court also joined Halcomb's case (Docket No. 13609-2013) initially, his case was later severed in March of 2015.  Halcomb was subsequently acquitted of all charges following a jury trial in June of 2015.

[4] Linnen was convicted of similar offenses, and his direct appeal is docketed at 614 WDA 2016.

[5] The charge of persons not to possess firearms was severed from the case before trial.

[6] No further punishment was imposed on the remaining convictions.

Carr filed a timely post-sentence motion challenging the weight and sufficiency of the evidence, the court's denial of a motion for mistrial, and the discretionary aspects of his sentence. On April 19, 2016, the trial court denied the post-sentence motion, and this timely appeal, filed by new counsel, followed.[7]

Based on our disposition, we will address Carr's first two claims together. In his first issue, Carr contends the trial court erred when it failed to grant a mistrial after Green testified that Linnen had been arrested before for "a homicide that he beat."[8] Carr's Brief at 17, quoting N.T., 1/12-15/2016, at 144. Although Carr recognizes the prior arrest referenced only Linnen, he insists "[t]he inference is that these defendants commit murders all the time, they just haven't been caught or convicted before." Id. at 21. Further, Carr asserts the court's cautionary instruction was inadequate to cure the prejudice. See id. at 18.

In his second issue, Carr argues the evidence was insufficient to support his conviction of the attempted homicide of Sutton.[9] See id. at 22. He

_____

[7] On May 24, 2016, the trial court ordered Carr to file a concise statement of errors complained of on appeal. After requesting an extension of time until the notes of testimony from the jury trial were transcribed, Carr complied with the court's directive and filed a concise statement on September 27, 2016.

[8] "In reviewing a trial court's denial of a motion for a mistrial, our standard is abuse of discretion." Commonwealth v. Parker, 104 A.3d 17, 27 (Pa. Super. 2014), appeal denied, 117 A.3d 296 (Pa. 2015).

[9] Our review of a challenge to the sufficiency of the evidence is well-settled. We must determine "whether viewing all the evidence admitted at trial in the

emphasizes Sutton never saw him shoot at her, and, consequently, "there is no proof that [he] had the intent to kill Ms. Sutton at that time." Id. at 24.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we conclude the trial court properly disposed of Carr's first two issues on appeal in its opinion, and we rest on its well-reasoned basis. See Trial Court Opinion, 1/9/2017, at 5-10 (finding (1) motion for mistrial was properly denied because (a) the statement was not elicited by the Commonwealth, (b) the statement referenced only Carr's co-defendant, and "did not implicate [Carr] in any manner,"[10] (c) Carr did not specifically request a mistrial,[11] and (d) the cautionary instruction cured any potential prejudice; and (2) the evidence was sufficient to support Carr's conviction of the attempted murder of Sutton because (a) both Sutton and Green identified Carr as one of the shooters, (b) Green "specifically identified" Carr as one of the men, who while walking towards the porch, fired repeatedly at him and

_____

light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Tucker, 143 A.3d 955, 964 (Pa. 2016), appeal denied, 165 A.3d 895 (Pa. 2017).

[10] Trial Court Opinion, 1/9/2017, at 7.

[11] We note Linnen's counsel moved for a mistrial after the testimony. See N.T., 1/12-15/2016, at 144. When asked by the court for his thoughts, counsel for Carr stated: "The only thing that I would say that it is such an appropriate piece of information that I think that if we don't have a mistrial now we're going to be trying it again later. It's just something to taint the Jury to say he beat a homicide." Id. at 146-147.

Sutton,[12] and (c) specific intent to kill may be inferred from the defendant's use of a deadly weapon on a vital part of a victim's body).

With regard to Carr's third issue, we also agree with the trial court that the sentence imposed was illegal, and, consequently, we are compelled to vacate the sentence, and remand for resentencing.[13]  See id. at 10-11.

Section 906 of the Pennsylvania Crimes Code provides:

A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.

18 Pa.C.S. § 906.  The courts of this Commonwealth have interpreted the term "convicted" in Section 906 "to mean the entry of a judgment of sentence, rather than a finding of guilt by the jury."  Comonwealth v. Jacobs, 39 A.3d 977, 983 (Pa. 2012).  Accordingly, while a defendant may be convicted of the inchoate crimes of attempt and criminal conspiracy when both crimes have the same objective, i.e., the murder of the victim, he may not be sentenced for both crimes.

In the present case, the trial court imposed separate sentences on Carr's convictions of attempted homicide and conspiracy to commit homicide.  There is no dispute that both charges were directed to the commission of the same crime.  Moreover, although Carr did not raise this issue before the trial court,

_____

[12] Id. at 9.

[13] We note the Commonwealth concedes that Carr's sentence, as imposed, is illegal.  See Commonwealth's Brief at 22-23.

a claim that a sentence violates Section 906 implicates the legality of a sentence and may be raised for the first time on appeal. See Jacobs, supra, 39 A.3d at 982.

"When a lower court improperly convicts and sentences a defendant for two inchoate crimes, this Court has the option either to remand for resentencing or amend the sentence directly." Commonwealth v. Cooke, 492 A.2d 63, 70 (Pa. Super. 1985). Here, because the trial court imposed the sentences to run consecutively, the vacation of one sentence will disturb the entire sentencing scheme. Accordingly, we are constrained to vacate Carr's judgment of sentence and remand this case to the trial court for resentencing.[14] See Commonwealth v. Ruffin, 16 A.3d 537, 544 (Pa. Super. 2011).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

_____

[14] It merits mentions that Linnen's sentence was vacated on direct appeal for the same reason. See Commonwealth v. Linnen, ___ A.3d ___, 614 WDA 2016 (Pa. Super. filed July 6, 2017) (unpublished memorandum).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   10/10/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) ) ) | CRIMINAL DIVISION |
| v. | ) ) | NO: CC201312279 |
| TAEVON MAURICE CARR, | ) ) ) | |
| Defendant. | ) | |

TODD, J.

January 9, 2017

## OPINION

This is an appeal by Defendant, Taevon Maurice Carr, from the judgment of sentence of April 6, 2016 after Defendant was found guilty on January 15, 2016 of two counts of Criminal Attempt Homicide in violation of Pa.C.S.A. § 901(a), Criminal Conspiracy to Commit Homicide in violation of 18 Pa.C.S.A. § 903(c), two counts of Reckless Endangering Another Person in violation of 18 Pa.C.S.A. § 2705 and one count of Possession of a Firearm by a Minor in violation of 18 Pa.C.S.A. § 6110.1(a). Defendant filed Post Trial Motions that were denied by an order of April 19, 2016. Defendant filed his Notice of Appeal on May 19, 2016. On May 24, 2016 an order was entered directing Defendant file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days. On September 27, 2016 Defendant filed his Concise Statement which set forth the following:

"A.   The lower court erred when it denied the Motion for a Mistrial when one of the two victims, Irvin Green, blurted out in front of the jury that Parrish Linnen, Mr. Carr's codefendant, had been charged previously with criminal homicide and "beat it", thereby denying Mr. Carr a fair trial. The jury could have determined that Mr. Linnen had a propensity for violence,

and found Mr. Carr guilty by association with his codefendant, and was free to surmise that he too previously had been charged with homicide. The curative instruction was insufficient to overcome the prejudicial impact of the statement.

B.     The evidence was insufficient as a matter of law to sustain the conviction of Criminal Attempt Homicide with respect to Tashawna Sutton insofar as she testified that she never saw Mr. Carr shoot at her or anyone else. The other victim, Irvin Green, testified that he heard Parrish Linnen tell Dakota Halcomb to kill Tashawna Sutton. Mr. Green heard gunshots, but did not see who was firing at them. He only reportedly saw Mr. Carr when he was loading his gun. For these reasons, the Commonwealth failed to prove that Mr. Carr had the specific intent to kill Ms. Sutton, or that his actions constituted a substantial step towards the commission of the crime of Criminal Attempt Homicide as to Ms. Sutton.

C.     The lower court improperly convicted and sentenced Mr. Carr for two inchoate crimes, Criminal Attempt - Homicide (18 Pa.C.S. § 901) and Criminal Conspiracy (18 Pa.C.S. § 903). The court imposed terms of imprisonment at both counts of Criminal Attempt - Homicide, and also imposed a term of imprisonment for the one count of Criminal Conspiracy. Convictions and sentences for two inchoate crimes directed to the commission of the same crime is prohibited by 18 Pa.C.S. § 906."

## BACKGROUND

This matter arises out of the shooting of Irvin Green and Tashawna Sutton on August 1, 2013 in Clairton, Pennsylvania. The evidence at trial established that Green and Sutton left their home on Wylie Avenue in the early morning hours of August 1 to walk to a nearby banking machine to withdraw money from Green's account. (T., p. 99) Green and Sutton walked up Wylie Avenue to its intersection with Miller Avenue and turned right on Miller Avenue toward the banking machine. As they were walking on Miller Avenue, Defendant and Dakota Holcomb crossed the street in front of them. (T., p. 101) Both Green and Sutton knew Defendant and Holcomb but did not speak with them. Green and Sutton continued onto the banking machine and after withdrawing the money, walked back up Miller Avenue to Wylie. As they turned onto Wylie Avenue, they again saw Defendant and Holcomb standing on Wylie Avenue but they were

2

now accompanied by Parrish Linnen and a fourth unidentified man. (T., pp. 105, 197)  As soon as Green and Sutton turned onto Wylie Avenue, the four men turned and began walking down Wylie Avenue towards Green and Sutton's home but shortly thereafter Green and Sutton lost sight of them.  (T., pp. 105-106,197)  Green and Sutton continued onto their house and as Sutton was unlocking the front door they began hearing gun shots and both Green and Sutton were immediately struck by the gun fire. (T., pp. 109 – 110)  Green testified that he fell but then started to get up and as he did he turned and saw three men coming out of the darkness from across the street walking closer to his house as they continued shooting. (T., p. 109-110)  Green testified that all three had guns in their hands and he watched as they continued firing at him and Sutton as they approached within a few feet of them.  Green identified Defendant, Linnen and Holcomb as the shooters.  Green testified that he could clearly see their faces by the light from his front porch and he watched as they reloaded their guns.  (T., p. 111)  Green testified that he was shot six times and Sutton, who was also shot several times, fell to the ground just off their porch. (T., p. 113)  Green testified that he then ran towards Sutton's mother' home, which was about five houses away, and was pursued by Defendant and Linnen.  When he reached the house he turned and was shot by Defendant in the shoulder and he fell to the ground. While lying on the ground, Defendant stood over him and shot him in the face while Linnen was standing directly behind him. (T., pp. 114-115)  Green testified repeatedly that he immediately recognized Defendant and Linnen and that he knew them from having lived in the Clairton area for much of his life and knowing their families.

Sutton also testified that as she began to open the door to their home she heard gun fire and was immediately hit. (T., p. 203)  She fell to the ground and then tried to get up and as she did she was shot in the chest by Linnen. (T., p. 204)  As she lay on the ground, Holcomb then

3

stood over her pointing his gun and repeatedly pulled the trigger but it didn't fire. She then heard Linnen say "Fuck that bitch. She is dead anyway." (T., p. 206) She then saw Defendant and Linnen and chase Green as he ran down the street. As she lay on the ground she called 911. (T., p. 207) Sutton also testified that she knew Defendant and Linnen from living in Clairton and specifically testified that she had seen Defendant in the community "thousands" of times. (T., p. 193) On cross examination Sutton acknowledge that she did not see Defendant shooting. (T., p. 223)

The Commonwealth also presented the testimony of Sergeant Keith Zenkovich of the Clairton Police Department who testified that he arrived on the scene shortly after the shooting. After Green was placed into an ambulance Zenkovich asked Green who shot him and he stated he was shot by Defendant and "P. Money." (T., p. 260) Zenkovich then went to the ambulance that Sutton was in and she indentified the shooters as Defendant and Linnen. (T., p. 261)

The Commonwealth also presented the testimony of Detective Steven Hitchings of the Allegheny County Police who also testified that he spoke to Green at the hospital later that morning and he again identified Defendant and Linnen as the shooters. (T., p. 276) Hitchings also created a photo arrays and returned to the hospital and presented the arrays to Green from which Green immediately identified Defendant and Linnen as two of the shooters. (T., pp. 280, 283)

As noted above, Defendant was convicted of two counts of Criminal Attempt Homicide, Conspiracy, and two counts of Recklessly Endangering Another Person. On April 6, 2016 Defendant was sentenced to two concurrent sentences of 15 to 30 years for the criminal attempt homicide convictions, a consecutive sentence of 10 to 20 years for conspiracy and a concurrent sentence of 9 to 18 months for possession of a firearm by a minor.

4

**DISCUSSION:**

In his first issue on appeal, Defendant claims that it was error to dismiss the motion for a mistrial made by Linnen's counsel when Green stated in front of the jury during cross examination that Linnen had previously been charged with criminal homicide. Defendant asserts that the jury could have determined that Linnen had a propensity for violence and found Defendant guilty by association with Linnen and was free to surmise that he too previously had been charged with homicide. Defendant asserts that the curative instruction was insufficient to overcome the prejudicial impact of the statement.

During cross examination Linnen's counsel repeatedly attempted to discredit Green's identification of Linnen by eliciting testimony about Green's extensive criminal history, his drug usage and addiction and the fact that he was being treated for paranoid schizophrenia at the time of the shooting. (T., pp. 133 – 143) In addition, Linnen's counsel attempted to discredit Green's testimony that he could identify Linnen because Green knew him from the years they lived in the same community. Linnen's counsel attempted to establish that there were extended periods of time when Green was incarcerated and, therefore, could not have seen or been around Linnen. In response to questions concerning when both he and Linnen were in the Clairton community the following exchange took place:

"Q. Now, you would agree with me there is a four-year period of time you're not in Clairton, correct?

A. Yeah.

Q. 2008-2012, correct?

A. Yes, sir. *Man, I know he was incarcerated for six years. I know I was incarcerated for six years and he ain't seen him and he ain't seen me,* but I know him.

Q. *Did you just testify that my client has been incarcerated for six years?*

5

A.   Yeah.  Yes, sir.

Q.   *So let's narrow that down.*  When possibly could you have seen Parrish Linnen in the projects?

A.   Way before he even got arrested.  *Way before he got arrested for the homicide that he beat."*  T., pp. 143-144) (Emphasis added)

At that point Linnen's counsel made a motion for a mistrial stating:

"The basis is this individual, without my solicitation, I did not solicit the nature of my client's underlying charge, blurted out that he knew my client before he was arrested for the homicide that he beat." (T., p. 144)

In response the Commonwealth argued that the statement was elicited by questioning from Linnen's counsel; that Linnen's counsel could observe the outrage that the Green exhibited during his testimony concerning the attack on him and Sutton; and, that given repeated questioning about the opportunities to observe Linnen in the community, including specific question questioning about when Linnen was incarcerated, it was not unpredictable that Green might make statements about Linnen's criminal history. The motion for a mistrial was denied and the jury was immediately given the following cautionary instruction:

"Ladies and Gentleman of the Jury, there was a statement made by the witness on the stand concerning one of the Defendants and brought reference to a prior matter involving a homicide. I want you to disregard that. It's hearsay and not admissible and you should pay no attention to it." (T., pp. 147 – 148)

Clearly Green's reference to Linnen's previous arrest for a homicide was inadmissible. However, not all testimony or references to unrelated criminal conduct of a defendant is a basis for a mistrial.  In *Commonwealth v. McEachin*, 537 A.2d 883  (Pa. Super. 1988) the Court stated:

There is no *per se* rule that requires a new trial for a defendant every time there is reference to prior criminal activity. *Commonwealth v. Heaton*, 504 Pa. 297, 472 A.2d 1068 (1984). "[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." *Commonwealth v. Williams*, 470 Pa. 172, 178, 368

6

A.2d 249, 252 (1977).... An immediate curative instruction to the jury may alleviate any harm to the defendant that results from reference to prior criminal conduct. [citations omitted] ... "[W]hether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances." *Commonwealth v. Richardson,* [496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981) ]. <u>Com. v. McEachin</u>, 371 Pa. Super. 188, 198–200, 537 A.2d 883, 888–89 (1988)

In determining whether a mistrial should be granted, consideration must also be given to the nature of the reference and whether the testimony was intentionally elicited by the prosecutor. *Commonwealth v. Satzberg,* 516 A.2d 758, 762 (1986) In this case it is clear that the testimony at issue was not elicited in any manner by the Commonwealth. In addition the statement made no reference to Defendant. There is no basis to believe that the jury would associate Defendant with the homicide that Linnen was allegedly charged with. The statement specifically referred to Linnen and did not implicate Defendant in any manner. Defendant did not request a mistrial nor did he request a separate curative instruction as it was clear that Green's statement applied only to Linnen. In addition, during the final charge the jury was specifically instructed that:

> "You heard testimony throughout the trial potentially concerning other possible criminal activities involving both Defendants. This testimony is not evidence against these Defendants, nor does it have any relevance in this case before you now. You must disregard this testimony in its entirety." (T., p. 442-443).

Based on all of the circumstances, there was no error in failing to grant the mistrial. and there is no merit to the claim that Defendant was denied a fair trial.

Defendant next argues that the evidence was insufficient as a matter of law to sustain the conviction of criminal attempt homicide with respect to Tashawna Sutton because she testified that she never saw Defendant shoot at her or anyone else. Defendant also contends that Green testified that he heard Linnen tell Halcomb to kill Tashawna Sutton. Defendant also contends

7

that Green heard gunshots, but did not see who was firing at them and only saw Defendant when he was loading his gun. As a result of the foregoing, Defendant contends that the Commonwealth failed to prove that Defendant had the specific intent to kill Sutton, or that his actions constituted a substantial step towards the commission of the crime of criminal attempt homicide as to Sutton.

When reviewing a sufficiency of the evidence claim the evidence must be viewed in the light most favorable to the Commonwealth, as verdict winner, to determine if there is sufficient evidence to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. McNair*, 603 A.2d 1014 (1992). It is exclusively within the province of the fact-finder to believe none, some or all of the evidence presented. *Commonwealth v. Henry*, 569 A.2d 929, 939 (1990); *Commonwealth v. Jackson*, 485 A.2d 1102 (1984). If the fact finder reasonably could have determined from the evidence presented that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 637 A.2d 1335, 1343 (1994); *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000)

Criminal attempt is defined in 18 Pa.C.S.A. §901 as follows:

(a) **Definition of attempt.**--A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901

The elements of the crime of attempt are an intent to commit a specific crime and any act constituting a substantial step toward the commission of that crime. *Commonwealth v. Fierst*, 257 Pa.Super. 440, 390 A.2d 1318 (1978). The intent to commit a crime may be inferred from the actions of the defendant in light of all attendant circumstances and even though direct evidence thereof is lacking. *Commonwealth v. Chance*, 458 A.2d 1371, 1374 (1983) *Commonwealth v. Cross*, 331 A.2d 813, 814 (1974) To prove a charge of attempted homicide,

8

the Commonwealth must establish that the accused took a substantial step toward committing homicide, with the specific intent to kill. Such specific intent may reasonably be inferred from an accused's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Hobson*, 604 A.2d 717 (1992). The offense of attempted homicide is completed by the discharging of a firearm at a person with intent to kill, even if no injury is suffered. *Commonwealth ex rel. Robinson v. Baldi*, 106 A.2d 689 (1954).

In the present case there is more than sufficient evidence to establish that Defendant was guilty of criminal attempt homicide as to Sutton. Although Sutton testified that she did not see Defendant firing his weapon, she unequivocally identified him as being one of the participants in the shooting. While his mere presence at the scene would not be sufficient to prove the intent to kill, her testimony, in combination with Green's testimony, establishes Defendant's intent. Green specifically identified Defendant as walking towards them with the other men firing repeatedly the weapon he held in his hand and that both he and Sutton were struck multiple times as they stood on the porch. Clearly the specific intent to kill Sutton can be inferred from Defendant's repeatedly firing of a firearm in the direction of the Sutton.

Q. Now to this point during this encounter, did you see who it was that was shooting at you, sir?

A. No. Because they were still in the dark, still in the dark. They was coming across the street. Whenever I fell on one knee, I looked, and they was coming across the street. We had our porch light on. Our porch light was on on the front and was on the side. The closer they got to our house, the way better you could see. *They walk right up from the cutoff from the houses across the street off the curb into the middle of the street still firing at us.* I was on one knee and then I got hit again and I fell. *Then Tashawna started -- they started lighting Tashawna up. Tashawna fell right on top of me and she started crying, screaming: Oh My God.* Then like I am looking at her but there was nothing I could do. Just nothing I could do. She got up. She tried to get up, and by this time, they're

9

on our sidewalk in front of our house and I am looking at all three of them.

Q. *You say "all three of them," who are the people we are talking about?*

A. *Taevon, Parrish and Dakota.*

Q. What were they doing then at this point?

A. *They were still shooting.* When they got all the way up on the lawn -- when they got all the way up like four or 5 feet away from us they was out of bullets.

Q. How do you know that was the case?

A. Because they pulled their clips out of their pockets and they put their clips in their gun and they had bullets in their pocket and reloaded the clips. I watched this with my own eyes.

Q. *Did each of them have a gun?*

A. *All three of them had a gun.* (T., pp. 110-111)

Defendant's contention that there is no evidence that would establish his intent to commit homicide as to Sutton is clearly contradicted by Green's testimony. The fact that Sutton did not see Defendant firing his weapon does not negate Green's unequivocal testimony that he saw all three of the men, including Defendant, shooting at them. In addition, the fact that the Commonwealth did not establish specifically which of the several bullets that struck Sutton were fired from Defendant's gun does not require a finding that the evidence was insufficient to convict Defendant of Criminal Attempt Homicide as to Sutton.

Defendant next asserts that he was improperly convicted and sentenced for two inchoate crimes of criminal attempt homicide and criminal conspiracy related to the attempted homicide. As noted above, Defendant was sentenced to two concurrent sentences of 15 to 30 years for the convictions for the criminal attempt homicide convictions and a consecutive sentence of 10 to 20

10

years for conspiracy to commit homicide. Defendant should not have been sentenced for both the inchoate crimes of criminal attempt homicide and the criminal conspiracy related to the attempted homicides. Sentences for more than one inchoate crime related to the same crime are prohibited by 18 Pa.C.S.A. §906 which provides:

> A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime. 18 Pa.C.S.A. § 906

Therefore, the sentence imposed must be corrected.

BY THE COURT:

_____
TODD, J.

11