J-S44034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY EUGENE KEMP | : | |
| | : | |
| Appellant | : | No. 143 MDA 2022 |

Appeal from the PCRA Order Entered October 28, 2021
In the Court of Common Pleas of Juniata County Criminal Division at
No(s):  CP-34-CR-0000099-2017

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED: JANUARY 10, 2023**

Bradley Eugene Kemp (Kemp) appeals[1] from the October 28, 2021 order

of the Court of Common Pleas of Juniata County (PCRA court) dismissing his

petition filed pursuant to the Post-Conviction Relief Act (PCRA).[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Kemp timely filed his *pro se* notice of appeal pursuant to the prisoner mailbox rule by handing the notice to prison authorities for mailing on November 24, 2021.  **See** Response to Rule to Show Cause, 6/30/22, at ¶ 11 & Exhibit A; Pa. R.A.P. 121(f), (g).

[2] 42 Pa.C.S. §§ 9541 *et seq*.

**I.**

**A.**

We glean the following facts from the certified record. Kemp met the 12-year-old victim, K.S. (Victim), in 2015 through Victim's uncle. Victim began racing go-karts and performing odd jobs for Kemp. Victim spent the night at Kemp's home after a race and awoke to find Kemp touching the Victim's genitals and touching himself.[3] Victim told Kemp that he was going to call the police and Kemp responded that he would shoot himself and that Victim would not be able to race go-karts anymore. Victim did not tell anyone about the interaction. Two weeks later, Victim spent the night at Kemp's home and again awoke to him touching Victim's genitals and touching himself. On that occasion, Victim pushed Kemp away and again told him that he would call the police. Kemp did not touch Victim again and Victim continued to spend the night at Kemp's home because he did not want to stop racing go-karts.

Victim did not report these incidents until 2017, after Kemp rubbed Victim's legs while they were alone together. He believed the abuse might start again so he reported the prior incidents to his uncle and the Pennsylvania State Police (PSP) three weeks later. Victim said he also argued with Kemp one week before reporting the incidents but could not recall why.

---

[3] Kemp told Victim that he had to spend the night at Kemp's house after racing so that he could clean the go-kart the next day.

At trial, Victim's uncle (Uncle) testified that in 2017, there was an altercation involving the police at Victim's home. The police asked Uncle if the Victim could stay with him for the night to "neutralize the situation." N.T., 8/1/18, at 70. Uncle did not know the nature of the altercation but agreed to watch Victim for the night. That night, Victim disclosed the abuse to him and Uncle immediately took him to the PSP barracks to report the incidents. No one was available to take a statement so they made an appointment for Victim to return the following morning.

Uncle testified that after Victim reported the incidents to police, he spoke with Kemp on the phone to arrange to retrieve some of Victim's belongings and return Kemp's belongings. During the conversation, Kemp was upset and said that he only touched Victim for five minutes and "[didn't] see what the big deal was." N.T., 8/1/18, at 66-67. Later, Kemp made the same statements in person when Uncle met with him to exchange the belongings. Uncle testified that Victim's behavior had changed prior to his disclosure and that he had been lashing out and acting out of character.

Victim's mother (Mother) testified that on the night Victim disclosed the abuse, he had gotten into a physical fight with her and would not tell her why he was upset. After he pushed and hit her, the police called Uncle to remove Victim from the home. The following day, she took Victim to the PSP barracks after Uncle had made an appointment for him to make a statement. Mother testified that Victim's behavior had changed a few weeks prior to his disclosure

but he had refused to tell her what was wrong. On the day of the altercation, they had fought because Mother refused to drive him to his girlfriend's home.

Mother testified that approximately three weeks before Victim's disclosure, he told her that he did not want to be around Kemp and that he quit racing. He would not explain why. Around that time, he also struck Kemp and told him he did not want to see him anymore when they ran into each other at an event. Victim had also gotten angry at Kemp on prior occasions when Kemp refused to drive him to his girlfriend's house.

Mother admitted that she previously messaged Kemp's sister and told her that Victim had recanted the allegations and that he should fight the charges. She said she was experiencing difficulty with Victim and they had been fighting about money. However, Mother said that Victim would often say things in the heat of the moment during arguments that were not true.

PSP Trooper Shane Varner (Trooper Varner) testified that he took Victim's statement when he reported the abuse. They were able to identify the dates of the incidents by looking at the racing schedule for 2015, as Victim recalled that the first incident happened after the first race of the season and the second occurred two weeks later. Victim called Kemp on the phone while Trooper Varner listened in to talk about the allegations, but Kemp denied that he had ever touched Victim. Trooper Varner then contacted Kemp directly to come in for an interview. During that interview, Kemp first denied the allegations and told Trooper Varner that he had recently argued with Victim.

Eventually, he admitted to undressing Victim and touching his genitals once but said that Victim had asked him to do so.

Prior to trial, Kemp requested that the trial court charge the jury with the standard jury instruction regarding failure to make prompt complaint in sexual offenses. *See* Failure to make prompt complaint in certain sexual offenses, Pa. SSJI (Crim), §4.13A. The trial court held that the instruction was not appropriate based on Victim's age, and trial counsel did not object to the failure to give the instruction after the trial court had charged the jury. Kemp was subsequently convicted of two counts of indecent assault of a child and two counts of corruption of minors[4] and the trial court sentenced him to an aggregate of 50 to 100 years' imprisonment.[5] Kemp filed a direct appeal but discontinued the matter prior to briefing.

**B.**

Kemp filed the instant timely petition on March 12, 2021. Relevant to this appeal, he argued that trial counsel was ineffective for failing to object to the trial court's refusal to give a jury instruction regarding Victim's failure to

---

[4] 18 Pa.C.S. §§ 3126(a)(7) & 6301(a)(1)(ii).

[5] Kemp was subject to a mandatory minimum sentence of 25 to 50 years' imprisonment on each count. *See* 42 Pa.C.S. 9718.2(a)(1) (mandatory sentencing for recidivist sexual offenders). The trial court imposed the sentences for indecent assault consecutively, the sentences for corruption of minors consecutively, and the sentences for indecent assault and corruption of minors concurrent to each other.

make a prompt complaint. The PCRA court held an evidentiary hearing at which trial counsel and Kemp testified. Trial counsel testified that his defense was to argue that Victim was in trouble at home when he made the allegations and did so to deflect attention and garner pity from his family. He attempted to attack Kemp's statement to Trooper Varner by playing the recording of his denials during the phone call with Victim and arguing that Kemp had been drinking and his statement was coerced.

Trial counsel testified that he requested the standard jury instruction on failure to make prompt complaint in sexual offenses before the trial and his request was denied. He did not raise his objection again after the trial court had concluded charging the jury because he believed that his objection prior to the charge was sufficient to preserve the issue for appeal.[6] He said he did not raise the issue in Kemp's direct appeal because he did not believe that he could establish an abuse of discretion under the circumstances.

PCRA counsel read the Subcommittee Note to trial counsel:

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For example, where the

---

[6] When the trial court denies a request for a jury instruction at a charging conference, a defendant is required to place a specific objection to the omission on the record following the charge in order to preserve the issue for appeal. **Commonwealth v. Parker**, 104 A.3d 17, 29 (Pa. Super. 2014). Trial counsel here failed to preserve this issue for appeal based on a misunderstanding of the relevant law. However, our disposition does not rest on whether trial counsel had a reasonable basis for failing to preserve the claim.

victim of a sexual assault is a minor, who may not have appreciated the offensive nature of the conduct, the lack of prompt complaint would not necessarily justify an inference of fabrication.

Notes of Testimony, 7/2/2021, at 26 (quoting Failure to make prompt complaint in certain sexual offenses, Pa. SSJI (Crim), §4.13A, *cmt* (citations omitted)). "This is especially true where the perpetrator is one with authority or custodial control over the victim." **Id.** at 28 (quoting Failure to make prompt complaint in certain sexual offenses, Pa. SSJI (Crim), §4.13A, *cmt* (citations omitted)).

Trial counsel admitted that there had been testimony from Victim establishing that, despite his age, he understood that Kemp's actions were wrong. While he believed that testimony would support issuing the instruction to the jury, he also thought additional circumstances supported the trial court's refusal to read the instruction. Specifically, reporting the abuse would have jeopardized Victim's ability to race go-karts, which he enjoyed and did not want to lose, and Kemp had custodial control or authority over Victim.

The PCRA court dismissed the petition, holding that the ineffectiveness claims lacked arguable merit. It further concluded that trial counsel's failure to preserve the issue did not undermine the truth-determining process and there was no reasonable probability that the outcome of the trial would have been different if trial counsel had raised the objection. PCRA Court Opinion, 10/28/21, at 2. Kemp appealed and complied with Pa. R.A.P. 1925.

**II.**

Kemp contends that trial counsel was ineffective for failing to preserve an objection to the denial of the failure to make prompt complaint jury instruction and for failing to raise that claim on appeal.[7] "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Sarvey***, 199 A.3d 436, 452 (Pa. Super. 2018). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." ***Commonwealth v. Robinson***, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). We presume that counsel has rendered effective assistance. ***See Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). Finally, counsel cannot be ineffective for failing to pursue a meritless claim. ***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa. Super. 2012).

The failure to make prompt complaint jury instruction[8] is derived from Chapter 31 of the Crimes Code, which relates to sexual offenses:

---

[7] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." ***Commonwealth v. Weimer***, 167 A.3d 78, 81 (Pa. Super. 2017).

[8]

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this

*(Footnote Continued Next Page)*

> Prompt reporting to public authority is not required in a prosecution under this chapter:  Provided, however, That nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3105.  "Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity."  **Commonwealth v. Dillon**, 360, 925 A.2d 131, 137 (Pa. 2007).  Thus, the jury is permitted to consider the lack of prompt complaint when weighing a victim's credibility.  **Id.**

However, "consideration should be given to factors inherent in cases involving minor victims which may explain the delay without reflecting unfavorably on the minor witness' credibility."  **Commonwealth v. Snoke**, 580 A.2d 295, 298 (Pa. 1990).  The **Snoke** Court recognized that not all delay in reporting sexual offenses bears on the alleged victim's credibility, and there may be other reasonable explanations for the delay, particularly in cases with minor victims.  **Id.** at 297-98.  As a result, the "propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a

---

> Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.  Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

**Commonwealth v. Trippett**, 932 A.2d 188, 200 (Pa. Super. 2007) (citation omitted).

subjective standard based upon the age and condition of the victim." ***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006).

In ***Commonwealth v. Ables***, 590 A.2d 334 (Pa. Super. 1991), we concluded that when there is no evidence regarding whether a minor victim comprehended the offensiveness of the alleged conduct, the trial court must consider additional factors to determine whether there was a legitimate reason for the delayed reporting. ***Id.*** at 340. We identified relevant factors for consideration as "[t]he age of the victim, the mental and physical condition of the victim, the atmosphere and physical setting in which the incidents were alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress." ***Id.*** There, we held that the instruction was not warranted when the defendant told the 13-year-old victim that she could not tell anyone about the abuse or he would get in trouble, and "the victim was at a difficult age to be able to adequately comprehend the nature of the acts perpetrated against her." ***Id.*** at 341.

Similarly, in ***Commonwealth v. Williams***, 274 A.3d 722 (Pa. Super. 2022), we found no abuse of discretion when the trial court denied the instruction when the 10-year-old victim did not report months of sexual abuse until a month after moving out of the defendant's home. There, the defendant had a supervisory role over the victim, the victim was afraid to report the abuse because the defendant had hit her brother in the past, the abuse was

non-violent and the victim was afraid of her mother's reaction. However, the victim's statements throughout the case were inconsistent and she admitted at one point that she would lie under oath if she was told to do so. We concluded that in a case where different factors both favor and disfavor the instruction, the trial court was entitled to exercise its discretion in declining to issue the instruction, particularly when it instructed the jury generally about credibility and evaluating the witnesses' inconsistent statements. *Id.* at 737.

Consistent with *Ables* and *Williams*, the trial court here did not abuse its discretion in denying Kemp's request for the prompt complaint instruction. Victim was 12 years old at the time of the abuse and testified that the incidents were non-violent and Kemp stopped when he told him to. Victim said he declined to report the incidents because Kemp, who he considered a friend, said he would shoot himself if Victim reported it and Victim would no longer be able to race go-karts. The abuse ceased for two years and Victim came forward with the allegations only when he was afraid that Kemp might attempt to touch him again. Finally, Kemp regularly had custodial control over Victim, who would spend the night at his home after the go-kart races. Based on these facts, the trial court did not abuse its discretion in concluding that Victim was under duress that prevented him from reporting the abuse immediately. Because this claim lacks merit, trial counsel was not ineffective for failing to preserve the issue for appeal. *Rykard*, *supra*.

Moreover, we cannot conclude that the outcome of the proceedings would have been different if the trial court had issued the instruction to the jury. Trial counsel thoroughly cross-examined Victim regarding the delay in reporting the incidents, the fact that Victim had continued to spend the night at Kemp's home even after the abuse occurred, and that Victim had argued with Kemp the week prior to disclosing the abuse. He further established that Victim was experiencing trouble at home when he chose to disclose the incidents. He elicited testimony from Mother that Victim would occasionally say untruthful things in the heat of the moment during an argument, and that on one occasion, she told Kemp's sister that Victim had recanted the allegations. Trial counsel relied on these aspects of the evidence in his closing argument that Victim's allegations were not credible.

The trial court properly instructed the jury on its duty to weigh the evidence and determine the credibility of witnesses in its deliberations. Notes of Testimony, 8/1/18, at 187-88. The jury was entitled to weigh the evidence of Victim's credibility against his testimony and Kemp's confessions to Uncle and Trooper Varner and conclude that Victim was testifying truthfully. *See Commonwealth v. Sandusky*, 77 A.3d 663, 669 (Pa. Super. 2013) (finding no prejudice in denial of prompt complaint instruction when the trial court otherwise thoroughly instructed the jury on its duty to evaluate witness credibility). Thus, because Kemp has not established that actual prejudice

arose from the alleged ineffectiveness, he is not entitled to relief. **Sarvey**,

**supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/10/2023